IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| PRESQRIBER, LLC, | § | |
|    *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO.6:14-CV-440 |
| AO CAPITAL PARTNERS, LLC d/b/a | § | |
| PROGNOSIS INNOVATION | § | |
| HEALTHCARE, | § | |
|    *Defendants*. | § | |
| | § | |
| | § | |

**DEFENDANT AO CAPITAL PARTNERS, LLC**
**d/b/a PROGNOSIS INNOVATION HEALTHCARE'S**
**MOTION TO DISMISS AND BRIEF IN SUPPORT**

Defendant AO Capital Partners, LLC d/b/a Prognosis Innovation Healthcare ("AO Capital" or "Defendant") files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because the patent upon which Plaintiff bases its claim is invalid as ineligible subject matter. For these reasons and those set forth in full below, AO Capital asks the Court to dismiss all claims set forth in Plaintiff's Original Complaint for Patent Infringement. (Doc. 1).

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT - PAGE i**

## TABLE OF CONTENTS

### Contents

I.      SUMMARY ...........................................................................................................1

II.     STATEMENT OF THE ISSUES.......................................................................3

III.    THE LEGAL STANDARD ................................................................................3

IV.     The Proper Analysis For Determining Whether Patent Claims Recite Patent-Eligible Subject Matter ........................................................................................................5

V.      NONE OF THE ASSERTED CLAIMS COVER PATENT-ELIGIBLE SUBJECT MATTER AND THUS, THE PATENT CANNOT FORM A PROPER LEGAL BASIS FOR THE PRESENT ACTION ....................................................................6

A.      This Case Is Uniquely Postured For Dismissal.................................................6

B.      The Asserted Patents And Their Lack Of Claimed Innovation          (Abstract Ideas and Impermissible Preemption) .......................................................................8

C.      The Independent Claim of the Asserted Patent is Not Patent-Eligible Under 35 U.S.C. §101..........................................................................................................10

        1.      Mere data gathering does not transform an unpatentable idea into a patent-eligible invention. ..............................................................................13

        2.      Mere inclusion of terms such as "processing" or "reformatter" and "random sequence" does not make the claims patent-eligible................................14

        3.      The Independent Claim Fails The Machine-or-Transformation Test of Patent Eligibility. .................................................................................................19

VI.     THE DEPENDENT CLAIMS ARE NOT PATENT-ELIGIBLE .....................20

VII.    PRESQRIBER DID NOT PROPERLY PLEAD INDIRECT INFRINGEMENT AND THE ACTION SHOULD BE DISMISSED AS TO ANY SUCH CAUSE OF ACTION. ..........................................................................................................21

VIII.   CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page**

*Alice Corporation Pty., Ltd. v CLS Bank International, et al.,* 573 U.S.__ (2014)   2, 6, 8, 10, 16, 18

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ..................................................................................... 4

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012) 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ........................................................ 4

Benson, 409 U.S. at 71 ................................................................................................................... 6

*Bilski,* ........................................................................................................................................... 5

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-674, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) ......................................................................................................... 5

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013) ..................................... 5

*Cyberfone Sys., LLC v. CNN Interactive Grp. Inc.*, 2014 WL 718153 (Fed. Cir. Feb. 26, 2014).. 7

*Cybersource Corp.*, 654 F.3d at 1366 ........................................................................................... 6

*CyberSource*, 654 F.3d at 1367-68, 1376-77 ............................................................................... 3

*DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F. Supp. 2d 509 (E.D. Tex. 2013) ........................ 8

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ....................................................... 3

*Diamond v. Diehr* .......................................................................................................................... 5

*Diamond v. Diehr*, 450 U.S. 175, 183, 192 (1981) ....................................................................... 8

*Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012) ............................... 3

*Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948) ................................... 2

*Garrett v. Celanese Corp.*, No. 3:02-CV-1485-K, 2003 WL 22234917 *1 (N.D. Tex. August 28, 2003) ......................................................................................................................................... 4

*Glory Licensing LLC v. Toys "R" Us, Inc.*, No. 09-4252, 2011 WL 1870591, *1-4 (D.N.J. May 16, 2011) ................................................................................................................................... 7

*Gottschalk v. Benson*, 409 U.S. 63 (1972) .............................................................................. 5, 14

*Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) ....................................... 4

*H&R Block Tax Services, Inc. v. Jackson Hewitt Tax Service, Inc.*, No. 6:08-cv-37 (E.D. Tex. Feb. 2, 2011) ................................................................................................................ 8

*In re Grams*, 888 F.2d 835 (Fed. Cir. 1989) ............................................................. 14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012) .................. 1

*OIP Techs., Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *13 (N.D. Cal. Sept. 11, 2012) 7, 19

*Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed. Cir. 2013) ........................................... 5, 6

*Uniloc U.S.A.*, 2013 WL 7393173 ............................................................................... 4

*Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc.*, 2013 WL 7393173 (E.D. Tex. Mar. 27, 2013) ... 4

*Uniloc USA*, 2013 WL 7393173 ................................................................................. 8

*Vacation Exchange, L.L.C. v. Wyndham Exchange & Rentals, Inc.*, No. 12-cv-04229, Dkt. No. 27 at 1-3 (N.D. Cal. September 18, 2012) ............................................................... 7

*WildTangent, Inc. v. Ultramercial, LLC, et al.*, 2014 U.S LEXIS 4647, 82 U.S.L.W. 3746 ......... 5

**Statutes**

35 U.S.C. §101 ........................................................................................................ 3, 8

FED.R.CIV.P. 12(b)(6) ............................................................................................. 3

## MOTION TO DISMISS

AO Capital seeks dismissal of this case pursuant to FED. R. CIV. P. 12(b)(6) because: (a) the asserted patent purports to cover an abstract idea which as a matter of law is ineligible as patentable subject matter under 35 U.S.C. §101; and (b) the Complaint filed by Plaintiff Presqriber, LLC ("Presqriber" or "Plaintiff") fails to properly plead indirect infringement.

## I.     SUMMARY

Prescriber's Original Complaint alleges infringement of one patent – U.S. Patent No. 5,758,095 ("the '095 patent" – Doc. 1 at Ex. A) the claims of which are drawn to abstract mental processes not tied to any inventive machine or other system.  At its heart, the '095 patent does nothing more than claim a patent on the abstract idea of, by its own words, "prescribing medication for a patient." *Doc. 1, Ex. A, p. 94.*  Prescriber has attempted to preempt the entire field of electronically prescribing medication[1] and the abstract idea of writing prescriptions using patient and drug information and communicating them to a pharmacy.  *See Doc. 1, Ex. 1, p. 94, Claim 1.*

But this claim fails to cover patent-eligible subject matter under 35 U.S.C. §101.  The patent should never have been issued by the United States Patent & Trademark Office ("the PTO") in the first place.  It cannot now form a proper basis for bringing an infringement suit.

The Supreme Court has ruled repeatedly that abstract business concepts may not be removed from the public domain and owned as private property under our patent laws. *Bilski v. Kappos, 130 S. Ct. 3218 (2010)*; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012). Such fundamental truths are "part of the storehouse of knowledge of all men

---

[1]     Plaintiff takes the position that any medical software that is in compliance with CRF §170.304(a) violates its patents.  In other words, every single piece of software in compliance with federal law regarding order entries by medical professionals violates its "patent."  This claim, in and of itself, is evidence that Plaintiff is impermissibly trying to pre-empt the entire field of electronic medical prescription writing.

. . . free to all men and reserved exclusively to none." *Bilski*, 130 S. Ct. at 3225 (quoting *Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)); *see Mayo*, 132 S. Ct. at 1301.  Most recently, in *Alice Corporation Pty., Ltd. v CLS Bank International, et al.*, 573 U.S. __ (2014), the Supreme Court reiterated the prohibition against patenting abstract business concepts, such as filling out patient medical prescriptions.  An "invention" is not patentable simply because it uses a "generic computer" or because it is limited to "a particular technological environment."  *Id.*, at 13.  The asserted patent violates this basic tenet of U.S. patent law prohibiting patents that subsume a fundamental concept (such as writing prescriptions). *see Alice*, 573 U.S. ____; *Bilski*, 130 S. Ct. at 3229-30; *Mayo*, 132 S. Ct. at 1293-94.  Even a cursory review compels the conclusion that the PTO erred in issuing the '095 patent.

It is irrelevant that certain claims of the asserted patent refer to the use of generic electronic databases or computer screens because simply executing an abstract principle on a computer does not transform a naked idea into a concrete invention.  *Mayo,* 132 S. Ct. at 1300-01.  In other words, the process of filling out a prescription form electronically is no more patentable than the process of filling out the form by hand.  *See id.*

Furthermore, merely using a computer to manipulate patient information or prescription drug information fails to meet the Federal Circuit's "machine-or-transformation test" for patent eligibility.  The Federal Circuit has clearly stated that the simple "manipulation or reorganization of data" does not satisfy its transformation test for patent eligibility.  *CyberSource Corp. v Retails Decisions, Inc.,* 654 F.3d 1366, 1375 (Fed. Cir. 2011).  Using a computer to create records, make adjustments to data, and transmit information is simply not a patentable concept.  *Alice Corp.,* 573 U.S. at slip 14.

Because the patent claims in this case: (a) are not bound up with any specific hardware or software to perform the recited steps; (b) impermissibly preempt the field of prescribing medication; and (c) do not pass the machine-or-transformation test, the claims are not patent-eligible and this action is ripe for dismissal. Further, no discovery is needed to resolve this issue of law and there are no claim construction issues that would have any bearing on whether the patent claims meet the §101 requirements.[2]  AO Capital respectfully requests that the Court address these issues now, early in the proceedings before the parties are required to proceed with time-consuming and expensive discovery.  The Court should correct the PTO's error and dismiss the present action.

AO Capital also moves for dismissal of the indirect infringement causes of action because Presqriber has improperly alleged inducement in its Original Complaint.

## II.      STATEMENT OF THE ISSUES

Whether this action should be dismissed for failure to allege infringement of a proper patent claim, where the asserted patent purports to cover an abstract idea that as a matter of law is ineligible as patentable subject matter under 35 U.S.C. §101.

Whether this action should be dismissed when an indirect infringement claim fails to allege direct infringement as required by *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S.____(2014).

## III.     THE LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the assertions alleged in a complaint.  *Garrett v. Celanese Corp.*, No. 3:02-CV-1485-K, 2003 WL

---

[2]  As but a few analogous examples, *see Alice Corp v. CLS Bank Int'l,* 573 U.S. ___ (implantation of the abstract idea of intermediated settlements on a generic computer); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1318, 1322–23 (Fed. Cir. 2012) (enabling tax-free property exchanges); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012) (administering and tracking life insurance policy values); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) (applying for credit); *CyberSource*, 654 F.3d at 1367-68, 1376-77 (verifying credit card transactions).

22234917 *1 (N.D. Tex. August 28, 2003), *aff'd* 102 Fed. Appx. 387 (5th Cir. 2004).   In evaluating a Rule 12(b)(6) motion, the ultimate question is whether the plaintiff's complaint, when viewed in a light most favorable to the plaintiff, states a valid cause of action.   *Id.*   The court should "accept . . . all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."   *Guidry v. Am. Public Life Ins. Co*., 512 F.3d 177, 180 (5th Cir. 2007).

However, "[w]hen the allegation in a complaint, however true, could not raise an entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quoting 5 WRIGHT & MILLER §1216, at 233-34) as discussed in *Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc*., 2013 WL 7393173 at *1 (E.D. Tex. Mar. 27, 2013).

Notably, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And whether a patent claim covers patent-eligible subject matter under 35 U.S.C. §101 is a question of law.   *Dealertrack*, 674 F.3d at 1333; *CyberSource Corp.*, 654 F.3d at 1367-69.   Thus, this Court has no obligation to accept that the asserted patent is valid if it determines that it fails to meet the statutory standards.   And this court should dismiss a complaint under Rule 12(b)(6) for failure to allege infringement of a patentable claim under §101.   *See, e.g., Uniloc U.S.A.*, 2013 WL 7393173 at *5 (granting motion to dismiss for failure to allege infringement of a patentable claim under §101; noting that "[s]ection 101 questions of patentability may be resolved before claim construction").

## IV.    THE PROPER ANALYSIS FOR DETERMINING WHETHER PATENT CLAIMS RECITE PATENT-ELIGIBLE SUBJECT MATTER

Section 101 of the Patent Act defines the four categories of inventions or discoveries that are eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. §101.  The Supreme Court has, however, recognized three specific exceptions to the otherwise broad domain of patent-eligible subject matter: "laws of nature, physical phenomena, and abstract ideas."  *Bilski*, 130 S. Ct. at 3225.  Abstract ideas are ineligible for patent protection because "they are the basic tools of scientific and technological work."  *Id.* at 3231 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) ("*Benson*")).  An unpatentable abstract idea can constitute, for example, a "fundamental economic practice long prevalent in our system of commerce . . . a building block of the modern economy." *Id.* (quoting *Bilski*, 130 S. Ct. at 3231). A monopoly over such ideas would improperly preempt use of such ideas in all fields.  *See Bilski*, 130 S. Ct. at 3231.

In determining whether a claim is drawn to patentable subject matter, the Court should consider the claim as a whole rather than dissecting and evaluating some elements separately from the rest.  *Diamond v. Diehr*, 450 U.S. at 188.  Assessing whether a claim covers an abstract idea or its application involves two steps.  First, the Court identifies what, if any, abstract idea is involved in the claim; and second, "whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine, and specific application of that idea."  *See Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-674, 2014 WL 923280, at *4 (E.D. Tex. Jan. 21, 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1346 (Fed. Cir. 2013) (*vacated and remanded by WildTangent, Inc. v. Ultramercial,*

*LLC, et al.*, 2014 U.S LEXIS 4647, 82 U.S.L.W. 3746 (remanded for further consideration in light of *Alice*, 573 U.S. ____))); *see also CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013) (plurality opinion) *cert. granted*, 2013 WL 4776518 (U.S. Dec. 6, 2013) (discussing *Mayo*, 132 S. Ct. at 1294-97).   Patent-eligible claims "tie the abstract idea to a *specific way* of doing something with a computer, or a *specific computer* for doing something." *Ultramercial*, 722 F.3d at 1344 (emphasis in original).   By contrast, claims that recite nothing more than the idea of doing the claimed step on a computer are patent ineligible.   *See Parker v. Flook*, 437 U.S. 584, 586 (1978); *Benson*, 409 U.S. at 71; and *Cybersource Corp.*, 654 F.3d at 1366.

## V.   NONE OF THE ASSERTED CLAIMS COVER PATENT-ELIGIBLE SUBJECT MATTER AND THUS, THE PATENT CANNOT FORM A PROPER LEGAL BASIS FOR THE PRESENT ACTION

### A.   This Case Is Uniquely Postured For Dismissal

No discovery is necessary to resolve the question of law posed by this motion.   In fact, the Federal Circuit does not require claim construction to precede a Court's §101 analysis, and numerous courts, including the Supreme Court, have held claims to be subject matter ineligible *without* claim construction.   *See, e.g.*, *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008); *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010); *Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *Uniloc U.S.A., Inc. et al. v. Rackspace Hosting, Inc. et al.*, No. 6:12-cv-00375, Dkt. No. 38, at 3, 9 (E.D. Tex. Mar. 27, 2013); *Vacation Exchange, L.L.C. v. Wyndham Exchange & Rentals, Inc.*, No. 12-cv-04229, Dkt. No. 27 at 1-3 (N.D. Cal. September 18, 2012); *OIP Techs. vs. Amazon.com, Inc*., No. 12-cv-01233, Dkt. No. 50 at 1, 7-8 (N.D. Cal. Sept. 11, 2012); *see also Glory Licensing LLC v. Toys "R" Us, Inc*., No. 09-4252, 2011 WL 1870591, *1-4 (D.N.J. May 16, 2011).

In any event, claim construction is not required to decide this patent eligibility question. *Cyberfone Sys., LLC v. CNN Interactive Grp. Inc.*, 2014 WL 718153, at *2 n.1 (Fed. Cir. Feb. 26, 2014) ("There is no requirement that the district court engage in claim construction before deciding §101 eligibility"); *see also Clear with Computers*, 2014 WL 923280, at *6 (citing *Bancorp*, 687 F.3d at 1274) (accepting non-movant's construction for purposes of conducting the §101 analysis). Like the situation presented in *Clear with Computers*, the claims are ineligible under any construction informed by the intrinsic record. For purposes of this motion, the Court may adopt claim construction most favorable to the patentee because there is ***no*** viable construction that could read into the presence of a specific device performing the steps of the claims in a way to salvage its patentability.

The Court should act now to invalidate the claim of the asserted patent before there is additional expenditure of party or judicial resources. *See, e.g., Clear with Computers*, 2014 WL 923280; *Uniloc USA*, 2013 WL 7393173; *H&R Block Tax Services, Inc. v. Jackson Hewitt Tax Service, Inc.*, No. 6:08-cv-37 (E.D. Tex. Feb. 2, 2011) (ECF. No. 137) (originally issued on Nov. 10, 2009 as ECF No. 108). The asserted patent in this case does not present a close question that will turn on either claim construction or discovery. Nowhere in the claims do the words "computer," "network," "software," "program," and "instruction" appear.[3] To the contrary, the claims and the contextual disclosure in the written description lack any "physical linkage" that is required to perform the claimed steps. *DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F. Supp. 2d 509, 527 (E.D. Tex. 2013) (Gilstrap, J.) (finding system claims patent-eligible where they disclosed "a specific set of physical linkages"). The Court needs no additional information to conclude that the steps claimed in the asserted patent are abstract ideas.

---

[3] The only mention of a computer related item is in the dependent claim no. 7 where there is a mention of a "computer display screen" and in no. 12 where a computer "mouse" is briefly mentioned. This lip service to technology does not provide the needed physical linkages.

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT - PAGE** 7

**B.     The Asserted Patent And Its Lack Of Claimed Innovation**
**(Abstract Ideas and Impermissible Preemption)**

The '095 patent simply claims the abstract idea of prescribing medication for a patient based on routine health and medication information – something doctors have done for generations.  *Doc. 1, Ex. A, p. 94.*   Prescribing medication is a quintessentially abstract intellectual concept.   Consequently, the '095 patent is drawn to steps that are well-known, routine, and inconsequential.  *See Alice,* 573 U.S. ____; *Mayo*, 132 S. Ct. at 1291-92.   The claims, "considered as a whole," simply fail to perform a combination of steps that "transform an unpatentable principle into patentable process."  *Diamond v. Diehr*, 450 U.S. 175, 183, 192 (1981).

Rather, the patent specification generally discussed a system and/or method[4] to prescribe medication that takes information about a patient, enters it into a database, and transmits that information to a pharmacy.   The absence of identifiable physical linkages to perform the supposed invention begins in the Abstract, which  states:

> A system and method for ordering and prescribing drugs for a patient.   The system includes an improved process for facilitating and automating the process of drug order entry.   The user may interact with the system in a variety of ways such as a keyboard, mouse, pen-base entry or voice entry.   The system includes a database containing medical prescribing and drug information which is both general and patient specific.   The system also permits the user to view current and previously prescribed medications for any patient.   The system can alert the user to potentially adverse situations as a result of the prescribed medication based on information in the database.   The system also can automatically determine product selection based on descriptions and can automatically communicate the order to a pharmacy.   Further, the system includes a means for automatically displaying messages to the user relating to predetermined situations.   For example, such

---

[4] In the '095 patent's abstract the patent refers to a "system and method for ordering and prescribing drugs."  The majority of the claims, and most importantly Claim 1, *purports* to be a system claim.  However it appears that the system claim is impermissibly mixing system claims with method claims inappropriately under §112.  *See also*, *IPXL Holdings, LLC v. Amazon.com, Inc.* 430 F.3d 1377, 1384 (Fed. Cir. 2005) and *Ex parte Lyell*, 17 USPQ2d 1548 (BPAI 1990).  *Alice* has made clear, for purposes of a §101 analysis as set forth in this Motion, the distinction is largely irrelevant.  As noted elsewhere in this brief, the *Alice* Court held "because petitioner's **system and media** claims add nothing of substance to the underlying abstract idea, we hold that they too are patent ineligible under §101."  *Alice,* 573 U.S. slip at 17, *emphasis added.*

situations may include a medication which is not available in the formulary or the prescription of a non-recommended medication.

(Doc. 1, Ex. A, p. 2). This failure to identify physical linkages carries through to the remainder of the specification, which is full of words, preferred embodiments, and figures, but adds little to further define the abstract concept set forth in the claims.

The patent has 82 pages of figures.  Notably, none of the Figures diagrams a network. None sets forth a box depicting a computer.  There is no code.  There are no algorithms.  Instead, the Figures include a depiction of what appear to be proposed screen shots of the system (Figs. 2-48 and 50-71 in Doc. 1, Ex. A), block diagrams of various aspects of the prescription process (Figs. 49a – 49l in Doc. 1, Ex. A), and a single flowchart that purports to illustrate the "Poetry System." (Fig. 1 in Doc. 1, Ex. A). This "novel innovation" purports to contain complex features such as "patient search by last name" (Fig. 49a) and "write prescription orders" (Fig. 49l) – none of which are novel or inventive.

Like the written description, the claims of the asserted patent lack hardware, programming instructions, code, or algorithms—anything that might tell a person of ordinary skill how to carry out the recited steps or would provide anything unusual or patentable.  The closest the patent comes is stating that a "user interface" is needed, to which a mouse or keyboard could attach.  (Doc. 1, Ex. A, p. 88).

The dependent claims do not cure the deficiencies of the independent claim, as they only generally target types of generic computer behavior or well-known processes relating to the issuance of prescriptions.  For example: "comprising means for receiving and storing messages related to said patient" (claim 2),  "means for alerting said user to potentially adverse situations as a result of prescribed medications based on information in said database" (claim 13), displaying allergy information (claim 14), and of disclosing reactions between two or more

medications (claim 15); all of these claims, like their counterparts, fall well short of providing a new or useful application for routine functions.[5]  None of the asserted claims identifies or claims any new software or computer technology.  There is nothing present in the '095 patent other than the "mere recitation of a generic computer" to fill out  prescription forms, an attempt to limit an abstract idea "to a particular technological environment," and/or an attempt to implement the abstract idea of writing prescriptions on a computer.  *Alice,* 573 U.S. at slip 13.  No claim withstands scrutiny under Section 101.  Every claim is invalid and this case should be dismissed.

### C.    The Independent Claim of the Asserted Patent is Not Patent-Eligible Under 35 U.S.C. §101

As further evidence of the patent's  ineligibility, the independent claim also fails the Federal Circuit Court of Appeals' "machine-or-transformation" test.

Patent eligibility is evaluated from the perspective of the claims.  *Dealertrack*, 674 F.3d at 1334 ("In considering patent eligibility under §101, one must focus on the claims").  Simply taking an abstract idea and adding steps – or breaking it into steps – that involve "well understood," "routine," or "conventional" activity contributes nothing inventive to an otherwise abstract idea, leaving only the abstract idea as the subject matter of the claims.  *Mayo*, 132 S. Ct. at 1294, 1299; *see also Flook*, 437 U.S. at 590.

In *Fort Props.,* the Federal Circuit found that a  real estate investment tool was not patent-eligible under 35 U.S.C. §101 because the claims did not require the use of a computer and were targeted to conceptual steps.  *Id.* at 1322.  That patent claimed an "investment tool" designed to promote tax-free exchanges of property by merely breaking down the method into

---

[5] "The specific question before us is whether an other-wise anticipated method claim becomes patentable because it includes a step of 'informing' someone about the existence of an inherent property of that method. We hold it does not. The 'informing' limitation adds no novelty to the method . . . . "  *King Pharmaceuticals v. Eon Labs, Inc.*, 616 F.3d 1267, 1278 (Fed. Cir. 2010).

four "conceptual steps": (1) "aggregating real property into a real estate portfolio"; (2) "dividing the interests in the portfolio into a number of deed shares"; (3) "subjecting those shares to a master agreement"; and (4) "describ[ing] how property can be bought and sold under this arrangement in a manner that permits a tax-deferred exchange." *Id*. All of the steps were previously known humanly-performed steps.

More recently, the Supreme Court in *Alice* analyzed a patent that used the "following steps: (1) 'creating' shadow records for each counterparty to a transaction; (2) 'obtaining' start-of-day balances based on the parties' real-world accounts at exchange institutions; (3) 'adjusting' the shadow records as transactions are entered, allowing only those transactions for which the parties have sufficient resources; and (4) issuing irrevocable end-of-day instructions to the exchange institutions." *Alice*, at 573 U.S. *slip 14*. Once again, every one of these steps was "purely conventional" and nothing more than "well-understood, routine, conventional, activities previously known to the industry." *Id, at* 573 U.S. *slip 15*.

Here, the PTO allowed claims that lack "substantive limitations that narrow, confine, or otherwise tie down the claim." *Mayo*, 132 S. Ct. at 1293. The  similarities between the '095 patent and the patent at issue in *Alice* are obvious:

|        | *Alice*                                                                                                         | '095 Patent                                                          |
|--------|---------------------------------------------------------------------------------------------------------------|---------------------------------------------------------------------|
| Step 1 | Create records (identify) each party                                                                          | Identify said patient (e.g. party)                                  |
| Step 2 | Obtain balances and information from real world institutions                                                   | Obtain and display information about currently prescribed medication |
| Step 3 | "Adjusting" records as transactions are entered (e.g. accepting information) only allowing (e.g. processing) certain transactions | Accept and process information regarding certain prescriptions       |
| Step 4 | Issuing instructions (communicating) to exchange institutions (pharmacies)                                     | Communicate said medication prescription to a pharmacy              |

In *Alice* the petitioner argued that the steps "require a substantial and meaningful role for the computer," but the court disagreed. *Alice,* 573 U.S. slip at 14. As in *Alice*, and discussed further below, the '095 patent also does not require a substantial or meaningful role for the computer. For instance, the '095 patent states "a drug order or prescription could be entered directly into a computer and transmitted electronically thereby reducing the time from when the order is written to when it is received in the pharmacy." (Doc. 1, Ex. A, p. 85.) But there is nothing substantial or unique about this process. There is simply nothing in the '095 patent that requires a substantial or meaningful use of a computer.

Much like the claims found invalid in *Fort Props.* and *Alice*, the sole independent claim of the asserted patent here, as well as dependent claims 13, 14, and 15 of the '095 patent, merely involve breaking a method into the known human steps of compiling information about a writing prescriptions without any mention whatsoever of using a computer or other non-human equipment.

| '095 Patent Claim 1 | '095 Patent Claim 13 | '095 Patent Claim 14 | '095 Patent Claim 15 |
|---|---|---|---|
| Identifying a patient | Claim 1 further consisting of | Claim 13 further consisting of | Claim 13 further consisting of |
| Database containing health and medication information regarding said patient | Database containing health and medication information regarding said patient | Wherein the adverse situation is an allergy reaction to said prescribed medication | Wherein the adverse situation is an interaction between two or more prescribed medications |
| Access said database and display a list of currently prescribed medication | Means for alerting user to potentially adverse situations as a result of prescribed medication | | |

| Access information regarding said medication "in a random sequence" including information about that medication such as dosage and frequency | | | |
|---|---|---|---|
| Communicate said medication prescription to a pharmacy | | | |

Claims 13, 14, and of the '095 Patent listed above, are no less "conceptual" just because they mention the generic concepts of placing or retrieving the information/data from a database. The concept simply does not convert the asserted claims into patent-eligible subject matter.

The two primary concepts claimed by the other asserted claims are data gathering elements and comparing the data to other known data.  Neither concept converts the asserted independent claim into patent eligible subject matter.

### 1.    Mere data gathering does not transform an unpatentable idea into a patent-eligible invention.

The fact that the asserted independent claim involves mere data gathering does not warrant patentability.  Nor does it matter that additional steps call for sorting data, comparing data, or displaying results.  Such steps are "well-understood, routine, conventional . . . or obvious," and therefore do not make the claim patentable.  *Mayo*, 132 S. Ct. at 1299 (quoting *Flook*, 437 U.S. at 590; quotation marks omitted).  Indeed, Presqriber's claims are closely analogous to those in *Flook* and *Alice*, where the Supreme Court held system and method claims patent-ineligible because, putting aside the abstract idea underlying the patent  (a formula for

updating alarm values), the other claim elements (involving chemical process, monitoring the process variables, and use of alarms) were all "well known."  *Flook*, 437 U.S. at 594-95.[6]

Even if independent claim 1 of the '095 patent, and dependent claims 13, 14 and 15 of the '095 patent, were expressly tied to a computer or any other machinery or equipment, it would not be enough.  For example, the steps of using a "computer display screen," or using a  "mouse" or "keyboard" contained in the other dependent claims (claims 7 and 12 of the '095 Patent) do not add any meaningful limitation because they are merely generic data-gathering and display steps inherent in any prescription writing process. As the Federal Circuit has explained, "mere data-gathering steps" cannot make an otherwise unpatentable claim patentable.  *Cyberfone Sys.*, 2014 WL 718153 at *2 ("[T]he idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent eligible"); *CyberSourc*e, 654 F.3d at 1370 ("We have held that mere data-gathering steps cannot make an otherwise nonstatutory claim statutory"; alterations omitted, quoting *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989).  All the '095 patent does is gather information about a patient and his/her prescriptions from an unknown "database."   This does not make an "invention" or "process" patentable.

### 2. Mere inclusion of terms such as "processing" or "reformatter" and "random sequence" does not make the claims patent-eligible.

The only non-human action involved in claim 1 of the '095 patent occurs when the "medication information" of "said patient" are "accepted and process[ed]" "in a random sequence."  The analysis of claims 13, 14, and 15 of the '095 is even more vague as they consist of nothing more than accessing a database and "alerting said user."

---

[6] Or in *Alice*, creating records, obtaining balances from a database, adjusting records as transactions are entered, and issuing instructions to a financial institution.  *Alice,* 573 U.S. at slip 14.

The Supreme Court's §101 jurisprudence makes clear that engrafting general-purpose computing components or actions onto abstract ideas does not make those ideas patent-eligible. Indeed, in *Mayo*, the Supreme Court specifically reaffirmed its prior holding in *Benson* that simply implementing an unpatentable idea on a computer is "not a patentable application of that principle." *Mayo*, 132 S. Ct. at 1301.  In *Benson*, the Court rejected a method as patent ineligible where the mathematical procedures required by the claimed algorithm could "be carried out in existing computers long in use, no new machinery being necessary." *Benson*, 409 U.S. at 67. The generic electronic and physical components slapped on to Presqriber's independent and dependent claims do not meaningfully limit them any more than did the general purpose computer in *Benson*.

The Federal Circuit's post-*Bilski* precedent is in accord.  For example, in the highly analogous *CyberSource* case, the patent claimed the less abstract process of detecting "fraud in a credit card transaction" in six, common-sense steps: (1) obtaining credit card information; (2) verifying the information; (3) evaluating the information to provide an indication of whether a transaction is fraudulent; (4) obtaining information about other credit card transactions from the same internet address; (5) constructing a map of credit card numbers associated with the address; and (6) utilizing the map of credit card numbers to determine if the transaction was likely made by the card's rightful owner.  *CyberSource*, 654 F.3d at 1372-74.  Despite the fact that the method involved the use of numerous computers, the Federal Circuit found the claim not patent-eligible under 35 U.S.C. §101 because the recitation of a computer was incidental, and the claim was essentially directed at "only the general approach of obtaining information about credit card transactions utilizing an Internet address and then using that information in some undefined manner to determine if the credit card transaction is invalid."  *Id.* at 1376.  Indeed, the court

recognized that the method could be "performed by human thought alone" and thus "embod[ies] the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none." *Id.* at 1373 (quoting *Benson*, 409 U.S. at 67).  The same is true of each of the claims of the patent asserted here.

Similarly, the claims in *Dealertrack* were directed to a "computer-aided" method for implementing a loan clearinghouse broken down into a series of common-sense steps: (1) "receiving data from one source"; (2) "selectively forwarding the data"; and (3) "forwarding reply data to the first source." *Dealertrack*, 674 F.3d at 1333.  The Federal Circuit held that the claims were not patent-eligible under §101 despite the fact that the claims referred to a computer because those claims "are silent as to how a computer aids the method, or the significance of a computer to the performance of the method." *Id.*  The fact that a computer might act "as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations," was not enough to make the otherwise abstract claim patent-eligible because the computer does not "impose a meaningful limit on the scope of [the] claim." *Id.* (quotation and citation omitted).

The same was true in *Fort Props.*, another authoritative case.  Certain claims added the requirement of a computer to generate deed shares.  The Federal Circuit ruled that such an additional requirement did not change the fact that the claimed real estate investment tool was an unpatentable "abstract concept." *Fort Props.*, 671 F.3d at 1322.  Consequently, the "computer limitation [was] simply insignificant post-solution activity." *Id.* at 1324.

Even more recently in *Alice*, where the petitioner argued that its claims tie to a "computer system and a computer-readable medium" failed. *Alice,* 573 U.S. slip at 16.  Simply using a computer for recordkeeping, "to obtain data," to adjust that data, and to "issue automated

instructions" are nothing more than "well-understood, routine, conventional, activities" and not patent eligible.  *Id., at* 15.  Nor does the recitation of using a "random sequence" through an "interpreter and reformatter" do anything to add to form over substance.  The Supreme Court has long "warned against interpreting §101 in ways that make patent eligibility depend simply on the draftsman's art." *Id*, at 16.

In all of these cases, the computing devices did not meaningfully limit the claims because: (1) the claimed methods "[did] not specify how the computer hardware and database are specially programmed to perform the steps claimed" where "the computer . . . [could] be programmed to perform very different tasks in very different ways" (*Dealertrack*, 674 F.3d at 1333 (quotation and citation omitted); *see also Fort Props.*, 671 F.3d at 1323-24); or (2) the claims fundamentally did not need a computer in the first place. *See CyberSource*, 654 F.3d at 1373.  Stated simply, unpatentable ideas cannot be transformed into patentable inventions "by merely requiring a computer to perform the method."  *CyberSource*, 654 F.3d at 1376.

Here, the mentioned "database," "interpreter and reformatter," or "computer display screen" do not meaningfully limit the claims by either specifying any particular type of media or by specifying *how* they should be programmed.  Nothing in any of the alleged patents discusses programming or how to implement the purported process.  Nor do the claims fundamentally require a computer.  All of the steps of the claims "can be performed by human thought alone," or by a person with a pad of paper.  *Id.*, at 1372.  The marked up version of claim 1 of the '095 Patent below is illustrative.

| **'095 Patent Independent Claim 1 (marked up)** |
|---|
| A system for prescribing medication for a patient, said system comprising: |
| Means for permitting a user to identify said patient; |
| ~~Database~~ <mark>physical medical chart</mark> containing health and medication information regarding said patient; |
| Means for ~~automatically accessing~~ <mark>reading</mark> said ~~database~~ <mark>chart</mark> and displaying to said user a list of all currently prescribed medication for said patient; |
| Means for ~~accepting and processing information regarding~~ <mark>reading</mark> said medication prescriptions for said patient from the user ~~including interpreter and reformatter means for processing said information received~~ <mark>from the chart</mark> ~~in a random sequence~~[7] from the chart, and wherein said information includes at least one medication identifier selected from the group consisting of:…recognition of medication quantity…;and |
| Means for communicating said medication prescription to a pharmacy. |

Moreover, these alleged computer-related elements do not render the claims patent eligible. "Limitations that . . . are merely tangential, routine, well-understood, or conventional . . . cannot confer patent eligibility." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1282-83 (Fed. Cir. 2013). Neither does creative drafting of any computer related element. *Alice,* 573 U.S. slip at 16. Such false limitations include steps that are "well-understood, routine, conventional activity previously engaged in by researchers in the field." *Id.* (citations omitted). Rather, the claim must include "meaningful limitations restricting it to an application, rather than merely an abstract idea." *Ultramercial, Inc. v. Hulu*, 722 F.3d 1335, 1343 (Fed. Cir. 2013); *CLS Bank Int'l*, 717 F.3d at 1281. A claim is not meaningfully limited "if it contains only insignificant or token pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment." *Ultramercial*, 722 F.3d at 1346.

---

[7] Reading the data in a "random sequence" does not add anything to the "invention" or that could not be done by a human. A doctor could easily read the data in the medical chart in a random sequence (e.g. instead of reading the name of the drug, the dosage, and the duration, he could read the dosage, name of the drug, and the duration).

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT - PAGE  18**

Here, the computer-related limitations in the claims of the asserted patent are simply false limitations that fail to meaningfully limit the claims, and are therefore insufficient to overcome the hurdle of patentability.  The claims are just an impermissible attempt to monopolize the "basic tools of scientific and technological work" by "patent[ing] the use of human intelligence." *Id.* at 1371 -73 (citations omitted).  They are invalid.

### 3.     The Independent Claim Fails The Machine-or-Transformation Test of Patent Eligibility.

In addition to the analysis described above, courts often look to the "machine-or-transformation test" as "an investigative tool" to assess patent eligibility of method claims. *Bilski*, 130 S. Ct. at 3227.  Under this test, a process is patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing."  *Id.* at 3225-26. Independent claim 1 and the dependent claims 13, 14, and 15 of the '095 patent, do not even mention equipment or machinery.  The dependent claims that do make some mention of equipment (e.g. claims 7 and 12) fail both prongs of the machine-or-transformation test because the recitation of general purpose "computer screen" or "keyboard" and "mouse" does not tie the claims to a particular machine or transform an article into a different form.

Critically, a claim does not satisfy the machine prong of the machine-or-transformation test ("MOTT") if the claim as a whole reveals that it only calls for a general purpose computer to perform the abstract idea.  *See Clear With Computers*, 2014 WL 923280, at * 6 (affirming the district court's ruling that a general purpose computer does not satisfy the machine prong of the MOTT) (citing *Bancorp Serv.*, 687 F.3d at 1273, 1278); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *13 (N.D. Cal. Sept. 11, 2012) ("[M]erely identifying general machine elements does not satisfy the MOTT; were that so, virtually any use of devices beyond the human body for a claimed method would satisfy the test").

Here, nothing in the independent claim distinguishes the recited technology components ("database" or "computer display screen") from their general use.  In particular, the independent claim does not "specify how the [database] is specially programmed to perform the steps in the patent."  *Dealertrack*, 674 F.3d at 1333.  In addition, nothing about such database makes it essential to the invention embodied by the independent claim.  Indeed, as illustrated above, the recited actions can just as easily be performed by a human.  "Using a computer to accelerate an ineligible mental process does not make that process patent-eligible."  *Bancorp*, 687 F.3d at 1279.  Therefore, the independent claim fails the machine prong of the machine-or-transformation test.

"[M]ere manipulation or reorganization of data . . . does not satisfy the transformation prong."  *Cybersource*, 654 F.3d at 1375.  Here, the independent claim merely assembles information from a patient about his or her medical prescriptions that is the result of bringing together information in the patient's chart and from the doctor writing the prescription.  In other words, the result of the claimed process is nothing more than the sum of its parts.  For this reason, the independent claim also fails the transformation prong.

## VI.    THE DEPENDENT CLAIMS ARE NOT PATENT-ELIGIBLE

The dependent claims of the '095 Patent are not eligible for patent protection either because they do not add meaningful limitations that restrict the scope of the independent claim in any way that would make them patentable.  For example, asserted dependent claims 13, 14, and 15 of the '095 Patent add additional non-specific industry terms, such as a generic "database" to be searched (e.g., claim 13), looking for "adverse situation" (claim 13), allergic reactions (claim 14), or "interactions between two or more prescribed medications" (claim 15).  These generalized and non-specific references to technology terms or token post processing, industry standard, activity do not impart patentability.

Further, none of the remaining dependent claims are eligible for patent protection for the same reasons. All claims 2-3 do is suggest a method for transmitting messages (something more commonly known as "e-mail"); claims 4-6 simply list database fields; claims 7-8 simply add the limitation of checking boxes and highlighting on screen information; claim 9 allows for a database modification of entry of new data to replace old data; and claims 10-12 simply permit the "invention" to use a variety of inputs (such as a mouse or pen). All further dependent claims are similar. There simply is not any meaningful limitations to the additional claims that make them patentable. Each and every dependent claim fails.

## VII.  PRESQRIBER DID NOT PROPERLY PLEAD INDIRECT INFRINGEMENT AND THE ACTION SHOULD BE DISMISSED AS TO ANY SUCH CAUSE OF ACTION.

As *Limelight Networks* made clear, there can be no indirect infringement/inducement where there is no direct infringement. *Limelight Networks,* 572 U.S. at slip 9. A party simply cannot be liable for inducing indirect infringement when no one party has directly infringed. *Id.* Presqriber's Original Complaint's "(Indirect Infringement – Inducement)" cause of action fails to specify that any end user, customer, third party, or even that AO Capital[8], has directly infringed on the '095 patent. Without pleading direct infringement as part of indirect infringement, Presqriber's claim cannot survive and should be dismissed by this Court.

---

[8]     While there is a cause of action against AO Capital for direct infringement, it is <u>not</u> incorporated into Presqriber's Indirect Infringement cause of action. Nothing in the Indirect Infringement cause of action alleges direct infringement by any party.

## VIII.   CONCLUSION

Presqriber's action should be dismissed both because the asserted patent does not purport to embrace patent-eligible subject matter under 35 U.S.C. §101 and are therefore, invalid, and because Presqriber failed to properly allege indirect infringement.

Dated:  July 29, 2014

Respectfully submitted,

*/s/ Stewart H. Thomas*
Stewart H. Thomas (Lead Counsel)
State Bar No. 19868950
E-Mail: sthomas@hallettperrin.com
Barrett C. Lesher
State Bar No. 24070137
E-Mail: blesher@hallettperrin.com

HALLETT & PERRIN, P.C.
1445 Ross Ave., Suite 2400
Dallas, TX  75202
Telephone: (214) 922-4132
Facsimile:  (214) 922-4142

and

Christopher B. Welsh
State Bar No.: 24049538
E-Mail: Cwelsh@stoddardwelsh.com

STODDARD AND WELSH, P.L.LC.
8150 N. Central Expressway
Suite 1150
Dallas, Texas 75206
Telephone: (214) 884-4900
Facsimile:  (214) 884-4910

***Counsel for AO Capital Partners, LLC d/b/a
Progonsis Innovation Healthcare***

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT - PAGE**  22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was electronically filed with the

Clerk of the Courts by using the ECF system and forwarded to all counsel through the Court's

ECF system.

Dated:  July 29, 2014

/s/ Stewart H. Thomas
Stewart H. Thomas