**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **PRESQRIBER, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Case No. 6:14-cv-440** |
| | § | |
| **AO CAPITAL PARTNERS, LLC d/b/a** | § | **PATENT CASE** |
| **PROGNOSIS INNOVATION** | § | |
| **HEALTHCARE,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT AO CAPITAL PARTNERS LLC'S RESPONSE TO
PLAINTIFF PRESQRIBER'S EMERGENCY MOTION FOR EXTENSION OF TIME
TO FILE ITS RESPONSE BRIEF ON PENDING MOTIONS TO DISMISS AND
MOTION FOR LEAVE TO TAKE LIMITED AND EXPEDITED DISCOVERY ON
PENDING MOTIONS TO DISMISS**

Defendant AO Capital Partners, LLC ("AO Capital"), pursuant to this Court's order (Doc. 15), hereby files its Response to Plaintiff's Emergency Motion for Extension of Time to File its Response Brief on Pending Motions to Dismiss (Doc. 14) and Plaintiff's Motion for Leave to Take Limited and Expedited Discovery on Pending Motions to Dismiss (Doc. 13), and in support thereof shows the Court as follows:

## I.     SUMMARY

1.  Plaintiff has filed (1) a motion asking this Court to give it a lengthy stay to obtain discovery so that it may reply to various Defendants' 12(b)(6) Motions to Dismiss and (2) a motion for leave to take "limited and expedited" discovery on the pending motions to dismiss. Plaintiff cites almost no case law in support of its position.  Its legal authority includes one case that has subsequently been overturned in favor of AO Capital[1], and blatantly misrepresents the

---

[1] Plaintiff incorrectly cites that *Ultramerical* was "vacated on other grounds."  In reality, *Ultramercial* was vacated on the <u>exact</u> grounds on which this matter hinges – namely that in light of *Alice Corp v. CLS Bank Int'l,* 573

holding of another (discussed in Paragraph II(C) below).  There is simply no factual or legal merit to Plaintiff's arguments.

2.   Rather, clear and repeated case law supports the proposition that a Court may decide a §101 type analysis at the 12(b)(6) stage *prior to* engaging in any discovery – a fact the Eastern District of Texas, Tyler Division, has already noted.  *See Ex. A,* Memorandum and Order, *Clear With Computers, LLC v. Dick's Sporting Goods, Inc.,* No. 6:12-cv-674, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) (invalidating patent on 12(c) motion without claim construction and noting the standard for 12(b)(6) dismissal is the same).

3.   Further, Plaintiff's discovery requests, which were served on all of the defendants, and not merely the defendants who filed the 12(b)(6) invalidity motion, appear to have been served in an attempt to threaten defendants into early settlement (discussed in part II(F) below).

## II.     ARGUMENT

### A.  Legal Standard

4.   Under a 12(b)(6) Motion, the Court "accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  Thus, the Court determines whether the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant.  *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007).  Nevertheless, "[w]hen the allegation in a complaint,

---

U.S.___ (2014), a Court should be able to dismiss more readily on §101 grounds.  Specifically, the judgment of the Court of Appeals in *Ultramercial,* overturning the trial court's granting of a 12(b)(6) motion to dismiss under §101 was "vacated."  *WildTangent, Inc. v. Ultramercial, LLC* 134 S.Ct. 2870 (U.S. June 20, 2014).

however true, could not raise an entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quoting 5 WRIGHT & MILLER §1216, at 233-34) as discussed in *Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc*., 2013 WL 7393173 at *1 (E.D. Tex. Mar. 27, 2013.

5.   Notably, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Ashcroft*, *Ashcroft*, 556 U.S. at 678 (2009) (2009).   And whether a patent claim covers patent-eligible subject matter under 35 U.S.C. §101 is a question of law.   *Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1333 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1367-69 (Fed. Cir. 2011).   Thus, this Court has no obligation to accept that the asserted patent is valid if it determines that it fails to meet the statutory standards.

### B.  Courts Regularly Decide 101 Motions Prior to Discovery

6.   Numerous courts have dismissed cases on §101 grounds, in response to 12(b)(6) motions, prior to the discovery phase.  For instance, in *Uniloc U.S.A. v. Rackspace Hosting, Inc.*, 2013 WL 7393172, *5 the court granted a motion to dismiss for failure to allege infringement of a patentable claim under §101; noting that "[s]ection 101 questions of patentability may be resolved before claim construction."  In a well-reasoned opinion, the court in *OIP Techs, Inc. v. Amazon.com, Inc.* expressly rejected the plaintiff's argument "that it is premature to consider defendant's eligibility challenges to the patent because the Court has yet to construe any of the claim elements."  No. C–12–1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012).

7.   There are literally dozens of cases in accord.  For instance, the court in *Glory Licensing, LLC v. Toys "R" Us, Inc.* found three patents ineligible under §101 on a 12(b)(6) motion.  No.

CASE 6:14-cv-00440-KNM Document 17 Filed 08/15/14 Page 4 of 12 PageID #: 316

09-4252, 2011 WL 1870591 (D.N.J. May 16, 2011).  In fact, as mentioned earlier, the Eastern District of Texas has itself decided that 12(b)(6) motions based on §101 can be determined prior to claim construction and discovery, *Ex. A,* citing to *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1274 (Fed. Cir. 2012).  S*ee also Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 2013 U.S. Dist. LEXIS 107184 (D. N.J. 2013) (invalidating three patents and dismissing the case under a 12(b)(6) motion); *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 WL 245026, at *3 (N.D. Cal. Jan. 22, 2013) ("There is no authority for the proposition that a patent may not be deemed ineligible subject matter on a motion to dismiss."); *Compression Technology Solutions LLC v. EMC Corp.*, 2013 U.S. Dist. LEXIS 78338 (N.D. CA 2013) (dismissing case and invalidating patent prior to claim construction or discovery). There is simply no basis to Plaintiff's contention that discovery is necessary prior to a 12(b)(6) ruling.

8.  In fact, requiring discovery prior to a 12(b)(6) ruling would completely defeat the purpose of a 12(b)(6) motion.  As the Eastern District of Texas has noted, "since the court is not permitted to go outside the complaint in deciding whether to grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss and since the court must accept the Plaintiff's well-pleaded facts as true," discovery is simply not appropriate.  *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, No. 4:10–CV–96, 2010 U.S. Dist. LEXIS 64231 at *3 (E.D. Tex. June 28, 2010).  Requiring discovery at the present stage would defeat the entire purpose of a 12(b)(6), which is to quickly and efficiently resolve a matter prior to requiring parties to engage in expensive discovery.

9.  The Court should also note that in its Emergency Motion (Doc. 14), Plaintiff failed to identify *any* issue of fact as it relates to claim construction which would preclude this Court from deciding Defendants' Motions to Dismiss at this time.  By Plaintiff failing to articulate a

compelling reason why the Court would lack a full understanding of the claimed subject matter prior to construing the claim, the Plaintiff is not entitled to discovery and summary judgment on a §101 claim may be appropriate.  *Cyberfone Sys., LLC v. Cellco P'ship,* 885 F. Supp.2d 710, 715 (D. Del. 2012).

### C.  Plaintiff's Misrepresentation of Case Law

10. Plaintiff cites only two cases in support of its Motions -- *Ultramercial* and *Rockstar Consortium* -- and has blatantly misrepresented the holdings of each to this Court.  In other words, Plaintiff has cited <u>no legal authority whatsoever</u> in support of its motions.

11. Plaintiff suggests to this Court that *Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.,* 2014 U.S. Dist. LEXIS 67097, 2014 WL 1998053 *3 (E.D. Tex. May 15, 2014) supports the position that "because of the presence of fact issues and claim construction issues" a "Rule 12/motion to dismiss" is inappropriate.  *Plaintiff's Motion, p. 2, ¶4* (Doc. 14). Nothing in *Rockstar* stands for that principle.  In fact, <u>Rockstar actually decided a 12(b)(6) Motion to Dismiss under §101 prior to discovery.</u>  *Rockstar,* 2014 U.S. Dist. LEXIS 67097 *12-13.  While the *Rockstar* Court did deny the plaintiff's §101 motion, it still ruled upon it prior to discovery.  *Id.*

12. Similarly, nothing in *Ultramercial* stands for the principle that a Court cannot decide a §101 motion at the 12(b)(6) stage. Subsequent to *Ultramercial*'s vacature, the Federal Circuit noted "although *Ultramercial* has since been vacated by the Supreme Court, we perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under §101."  *Bancorp Services, LLC v. Sun Life Assur. Co. of Canada (U.S)* 687 F.3d 1266 (Fed. Cir. July 26, 2012).  Even *Ultramercial* itself stated "this court has never set forth a bright line rule requiring district courts to construe claims before determining subject matter

eligibility." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1325 (Fed. Cir. 2011), *vacated sub nom. Wild-Tangent, Inc. v. Ultramercial, LLC,* 132 S.Ct. 2431 (U.S. May 21, 2012).

### D.   Recent Supreme Court Rulings

13. In light of recent Supreme Court rulings (in particularly *Alice Corporation*), it is even more appropriate to examine Defendants' Motions to Dismiss at this preliminary stage.  In *Alice Corporation Pty., Ltd. v CLS Bank International, et al.,* 573 U.S. __ (2014), the Supreme Court reiterated the prohibition against patenting abstract business concepts, such as filling out patient medical prescriptions.   An "invention" is not patentable simply because it uses a "generic computer" or because it is limited to "a particular technological environment." *Id.,* at 13.

14. Assessing whether a claim covers an abstract idea or its application involves two steps. First, the Court identifies what, if any, abstract idea is involved in the claim; and second, "whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine, and specific application of that idea." *See Clear with Computers, LLC v. Dick's Sporting Goods, Inc*., No. 6:12-cv-674, 2014 WL 923280, at *4 (E.D. Tex. Jan. 21, 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1346 (Fed. Cir. 2013); *see also CLS Bank Int'l v. Alice Corp. Pty. Ltd*., 717 F.3d 1269 (Fed. Cir. 2013) (plurality opinion) *cert. granted*, 2013 WL 4776518 (U.S. Dec. 6, 2013) (discussing *Mayo*, 132 S. Ct. at 1294-97).  Patent-eligible claims "tie the abstract idea to a *specific way* of doing something with a computer, or a *specific computer* for doing something." *CLS Bank International, et al.* v. *Alice Corporation Pty., Ltd.*, 717 F.3d 1269, 1302, *aff'd*,  *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S.Ct. 2347 (2014) (emphasis in original).  By contrast, claims that recite nothing more than the idea of doing the claimed step on a computer are patent ineligible. *See Parker v. Flook*, 437 U.S. 584, 586 (1978); *Benson*, 409 U.S. at 71; and *CyberSource Corp.*, 654 F.3d at 1366.

15. Nothing in the above required process, as briefed in Defendants' Motions to dismiss, requires claim discovery or detailed claim construction. This Court can construe any and all terms in a light most favorable to Plaintiff.[2] *See e.g. Ex. A.* Even upon doing so, it is clear that the '095 Patent covers ineligible subject matter. There is simply no discovery needed to determine this point.

### E. Specific Discovery Requests at Issue

### a. Requests for Admission

16. In addition to the fact that *any and all* discovery requests are inappropriate[3] at this point as discussed above, examining the specific discovery requests further shows their needlessness. Plaintiff's motion (Doc. 13) sets out the three requests for admission that it served for each of 10 claims of the '095 patent:

> a. Admit that the Accused Instrumentalities, in their normal intended use, include "means for communicating []medication prescription[s] to a pharmacy," as set forth in Claim 1 of the '095 Patent.
>
> b. Admit that the term "means for communicating said medication prescription to a pharmacy" that is contained in Claim 1 of the '095 Patent does not need to be construed in this case, in whole or in part.
>
> c. Admit that Defendant has no defense to infringement based on the claim limitation "means for communicating said medication prescription to a pharmacy" that is contained in Claim 1 of the '095 Patent.

*Plaintiff's Motion,* p. 7, *¶17* (Doc. 13) . Review of each of these requests further shows how unnecessary and inappropriate they are to the resolution of Defendant's Motion to Dismiss.

---

[2] Of course Defendants do not have to ultimately agree with any proposed construction, but it is Defendants' position that, for a 12(b)(6) motion, it is irrelevant how the claims are construed, as Plaintiff's entire patent purports to patent ineligible subject matter.

[3] Further, under local Rule 2-5(a), it is inappropriate to serve discovery requests about a party's claim construction position at this point of the litigation. Plaintiff is simply seeking to upend the litigation process to continue to attempt to force parties into settlements.

17. The first request asks the Defendant to admit that its products practice the claim element at issue. This request is plainly irrelevant to an invalidity motion. Even if the defendants' products practiced *every* element of *every* claim of the patent, such would still be irrelevant in an invalidity analysis. Similarly, the third request asks about the Defendant's infringement defenses, which are also irrelevant at this stage. The Plaintiff makes the illogical argument that if the Defendants don't unequivocally admit these requests, "this will confirm that there are factual issues and claim construction issues in this case that preclude the granting of a Rule 12 motion based on Section 101." This makes no sense. The Defendant's products and factual issues or claim construction relating to infringement have absolutely no bearing on an invalidity defense.

18. The second request asks the Defendant to admit that the claim term "does not need to be construed in this case, in whole or in part." Defendant has already stated, that for the purposes of its 12(b)(6) motion, the claim terms do <u>not</u> need construction. *See* AO Capital's Motion to Dismiss, Doc. 12, at p. 7 ("In any event, claim construction is not required to decide this patent eligibility question."). The requests for admission are thus in no way necessary for the purposes of the invalidity motion.

19. Further, the standing Discovery Order for patent cases in the Eastern District limits the parties to twenty-five interrogatories and twenty-five requests for admission. Although no specific discovery orders have been entered in this case, Plaintiff's 53 separate requests for admission are excessive in number, apart from their overall inappropriateness.

**b.  Interrogatories**

20. The Plaintiff claims it served a "single interrogatory." However, the interrogatory asks the Defendant to "identify and explain in detail all reasons why Defendant does not admit the request for admission" for each request not unequivocally admitted. This interrogatory thus has

53 discrete sub-parts (one for each request for admission served), and counts as 53 interrogatories. The large number of interrogatories is excessive in number.

### c. Discovery Served on Non-Moving Defendants

21. In addition to serving discovery requests on the defendants who filed a 12(b)(6) motion based on invalidity, the Plaintiff also served the *non-moving* defendants with the same discovery. *Plaintiff's Motion,* p. 10, ¶ 22 (Doc. 13). Plaintiff's reasoning for such service is convoluted:

> Presqriber believes that it is particularly important that these defendants respond to the discovery in light of the fact that they have chosen <u>not</u> to file a similar Section 101 motion. By filing answers or Rule 12 motions solely on other grounds, the non-moving defendants tacitly recognized that, at a minimum, a Rule 12 motion based on Section 101 would not be appropriate (and perhaps that Section 101 would not present a defense likely to achieve success at all). Presqriber strongly suspects that these defendants did not file Section 101 motions because they intend to assert many of the infringement, factual and claim construction issues that are among the key reasons that the Section 101 Motions to Dismiss should be denied.

22. *Id*. Based on this rationale, Presqriber needs discovery from the moving defendants because we filed a motion to dismiss and needs discovery from the non-moving defendants because they didn't. This makes no sense. There are any number of reasons some of the defendants chose not to file a 12(b)(6) invalidity motion, and none of those reasons have any bearing whatsoever on the Defendant's motion. The Plaintiff's actions in serving all of the defendants with early discovery plainly have no real relation to the motion to dismiss at issue.

### F. Plaintiff's Threats to Defendants

23. Plaintiff's true purpose of the early discovery appears to be to threaten defendants into early settlement. In an e-mail to counsel for *all* of the defendants, Presqriber's counsel attached the discovery requests and stated:

> Presqriber has served discovery requests on the defendants who have filed the Motions to date. I have attached a representative set of the requests. …

> If the pending Section 101 Motions to Dismiss are withdrawn and no more similar motions are filed, Presqriber will withdraw the discovery requests. Saving that, we intend to serve similar discovery requests on each defendant as it answers or otherwise responds to the Complaint.

*See* Exhibit B, E-mail from Craig Tadlock titled "Presqriber cases," dated July 30, 2014. The e-mail goes on to discuss Presqriber's "Early Settlement Program" and expresses a desire to "resolve the cases under the ESP if possible." *Id.*  Plaintiff's correspondence can only be interpreted as a threat to the defendants who had not yet answered that, if they did answer, or file a 12(b)(6) motion, they too would be served with voluminous discovery.  The gist of Presqriber's threat went even further, implying that if even one defendant does not withdraw its motion, Presqriber would file discovery on the other defendants.  ("If the pending Section 101 Motions to Dismiss are withdrawn and no more similar motions are filed, Presqriber will withdraw the discovery requests. Saving that, we intend to serve similar discovery requests on each defendant as it answers or otherwise responds to the Complaint."  *Ex. B.*)  In making these threats, Presqriber is using discovery for a *per se* improper purpose.  To threaten a defendant with discovery in an attempt to preclude that defendant from answering or filing a motion and to force a settlement is simply unacceptable behavior for an officer of the court. Defendant urges the Court to not reward Plaintiff's behavior with discovery that is unnecessary, improperly timed, and served with improper motives.

### III.    CONCLUSION

Plaintiff has failed to cite one authority in support of its position.  Neither of the two primary cases cited by Plaintiff actually holds what Plaintiff asserts (and in fact *Rockstar* holds the exact <u>opposite</u>.).  Plaintiff has failed to cite one fact issue or one claim construction issue that would prevent a §101 determination at this stage of the proceeding.  For Defendants' Motions to Dismiss, this Court is free to construe Plaintiff's pleading and claims in a light most favorable to

it.  There is simply no need for discovery, when it is so abundantly clear that Plaintiff's patent involves ineligible subject matter.  Plaintiff simply cannot, by way of a patent, preempt the entire field of electronically writing medical prescriptions (*see Defendants' Motions to Dismiss*).  This Court should deny Plaintiff's Emergency Motion for Extension of Time, deny Plaintiff's request for discovery, and proceed to determine the §101 issues as set forth in Defendants' Motions to Dismiss.

Dated:  August 15, 2014

> Respectfully submitted,
>
> */s/ Stewart H. Thomas*
> Stewart H. Thomas (Lead Counsel)
> State Bar No. 19868950
> E-Mail: sthomas@hallettperrin.com
> Barrett C. Lesher
> State Bar No. 24070137
> E-Mail: blesher@hallettperrin.com
> HALLETT & PERRIN, P.C.
> 1445 Ross Ave., Suite 2400
> Dallas, TX  75202
> Telephone: 214. 922.4132
> Facsimile:  214. 922.4142
>
> and
>
> Christopher B. Welsh
> State Bar No.: 24049538
> E-Mail: Cwelsh@stoddardwelsh.com
> STODDARD AND WELSH, P.L.LC.
> 8150 N. Central Expressway
> Suite 1150
> Dallas, Texas 75206
> Telephone: 214. 884.4900
> Facsimile:  214. 884.4910
>
> ***Counsel for AO Capital Partners, LLC d/b/a Progonsis Innovation Healthcare***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2014, a copy of the foregoing document was electronically filed with the Clerk of the Courts by using the ECF system and forwarded to all counsel through the Court's ECF system.

*/s/ Stewart H. Thomas*
Stewart H. Thomas
