**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **PRESQRIBER, LLC,** | |
| Plaintiff, | Case No. 6:14-cv-440 |
| v. | |
| | **PATENT CASE** |
| **AO CAPITAL PARTNERS LLC d/b/a PROGNOSIS INNOVATION HEALTHCARE,** | **JURY TRIAL DEMANDED** |
| Defendant. | |
| **CUREMD.COM, INC.** | Case No. 6:14-cv-446 |
| **E-MDs, INC.** | Case No. 6:14-cv-448 |
| **HEALTHLAND INC.** | Case No. 6:14-cv-452 |
| **MEDHOST, INC.** | Case No. 6:14-cv-454 |

**PLAINTIFF PRESQRIBER'S RESPONSE IN OPPOSITION
TO SECTION 101 MOTIONS TO DISMISS**

Craig Tadlock
State Bar No. 00791766
John J. Harvey, Jr.
State Bar No. 09179770
Keith Smiley
State Bar No. 24067869
**TADLOCK LAW FIRM PLLC**
2701 Dallas Parkway, Suite 360
Plano, Texas 75093
903-730-6789
craig@tadlocklawfirm.com
john@tadlocklawfirm.com
keith@tadlocklawfirm.com

*Attorneys for Plaintiff Presqriber, LLC*

Plaintiff Presqriber, LLC ("Presqriber") hereby files this Response in Opposition to the pending Motions to Dismiss filed by Defendants AO Capital Partners LLC d/b/a Prognosis Innovation Healthcare ("AO Capital") (Dkt. No. 12 in Case No. 6:14-cv-440), CureMD.com, Inc. ("CureMD") (Dkt. No. 16 in Case No. 6:14-cv-446), e-MDs, Inc. ("e-MDs") (Dkt. No. 12 in Case No. 6:14-cv-448), Healthland Inc. ("Healthland") (Dkt. No. 14 in Case No. 6:14-cv-452), and Medhost, Inc. ("Medhost")[1] (Dkt. No. 11 in Case No. 6:14-cv-454),[2] and in support thereof respectfully shows the Court as follows:

## **INTRODUCTION**

U.S. Patent No. 5,758,095 (the "'095 Patent") contains claims that describe a specific, effective, structured Interactive Medication Ordering System.  The '095 Patent was duly issued by the United States Patent and Trademark Office, in full compliance with Title 35 of the United States Code.  It is entitled to a presumption of validity.  Nothing about the Supreme Court's opinion in *Alice* or any recent Federal Circuit or District Court case on Section 101 subject matter eligibility has changed that in any way.  Likewise, nothing about *Alice* or any recent Federal Circuit or District Court case has changed the traditional Rule 12 standards in any way – the Court must draw all reasonable inferences in favor of the non-movant and view all facts in the light most favorable to the non-movant.  Finally, as recently reaffirmed by Judge Bryson sitting by designation in this District in the *Loyalty Conversion* case, nothing about *Alice* or any recent Federal Circuit case changes the principles that (a) the question of law presented by a Section 101 challenge may contain underlying factual issues,[3] and (b) that it is ordinarily

---

[1] Collectively, AO Capital, CureMD, e-MDs, Healthland, and Medhost are referred to as the "Moving Defendants."

[2] Defendant Practice Fusion, Inc. also filed a Motion to Dismiss (Dkt. No. 11 in Case No. 6:14-cv-460). Presqriber and Practice Fusion have reached a settlement, and dismissal papers have been filed with the Court.

[3] The presence of relevant fact issues, of course, defeats a Rule 12 motion under the relevant standards.

desirable and often necessary to resolve claim construction disputes prior to a § 101 analysis, because the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.

In this Response Brief, Presqriber shows that the claims of the '095 Patent are subject matter eligible because they do not simply describe an "abstract idea," but instead claim a specific, effective, interactive, structured **_system_** for the ordering of prescription medication that contains important features to ensure the accuracy and appropriateness of the medications prescribed for the patient.

To the extent the Court is not prepared to expressly find the '095 Patent to be subject matter eligible at this stage, the arguments put forth by Presqriber demonstrate that there are relevant fact issues, under the relevant Rule 12 standards, that require the Section 101 Motions to Dismiss to be denied, and that there are claim construction issues that preclude the Court from granting the draconian relief requested by the Moving Defendants in the Section 101 Motions to Dismiss.

The Moving Defendants certainly have not met their burden in this case.  Moving Defendants have not shown that the '095 Patent is subject matter ineligible under *Alice* or any other relevant authority, they have not shown the absence of relevant fact issues, and they have not shown the absence of relevant claim construction issues.  Instead, in their Motions and continuing in their Reply Brief, Defendants have taken a 50,000-foot level superficial analysis to try to persuade the Court that the '095 Patent is merely an "abstract idea," which ignores the limitations of the claims taken individually and as a whole and the specific structure of the claims, because the Moving Defendants could not possibly win their Motions if they undertook a close, meaningful analysis.  The Moving Defendants say nothing about the specification, the

preferred embodiments, or any of the traditional factors that underscore, concretely, what the claims cover.  The Moving Defendants provide little detail or analysis of the individual claims. Instead, they elected to adopt a wholly superficial approach that construes everything in their favor, flipping the Rule 12 standard on its head and ignoring their heavy burden at this stage of the case.

If the Moving Defendants truly wished to show that all claims of the '095 Patent fail under §101, they would have had to exclude *any* plausible construction of each claim that survives §101, while identifying an undeniable abstract idea at the right level of generality.  The Moving Defendants' insubstantial effort to grapple with the true scope of the '095 Patent and the claims' true meanings suggests that they are more serious about subjecting Presqriber and the Court to unnecessary effort and potentially exposing early infringement and claim construction positions.

In sum, the claims of the '095 Patent describe specific, efficient, valuable, structured systems for interactive medication ordering, and not a mere "abstract idea."  Moving Defendants have not demonstrated that the only plausible reading of the '095 Patent is that there is clear and convincing evidence that the '095 Patent is subject matter ineligible.  The defendants' motions to dismiss should be denied.

## PROCEDURAL BACKGROUND

1.      On May 8, 2014, Presqriber filed 26 cases (Case Nos. 6:14-cv-439 through -464, consecutively) based on the '095 Patent.  Generally, the accused instrumentality for each defendant comprises Electronic Health Record ("EHR") systems that include interactive prescription medication ordering systems in accordance with one or more claims of the '095 Patent.  (In its Complaints, Presqriber identifies the accused EHR systems as those that have

achieved ONC-ATCB Certification for "Ambulatory" and/or "Inpatient" medical practices, because those certifications contain requirements that show that compliant systems meet many of the limitations of Claims 1, 13, 14 and 15 of the '095 Patent.)

2.      On July 29 through August 1, 2014, Defendants AO Capital, CureMD, E-MDs, and Medhost filed substantially similar Motions to Dismiss.  Defendant Healthland filed a substantially similar motion on September 4, 2014.  These Motions are filed under Fed. R. Civ. P. 12(b)(6), and the grounds for the Motions are based on the Moving Defendants' arguments that all claims of the '095 Patent are subject matter ineligible under 35 U.S.C § 101 (collectively, the five pending motions will be referred to as the "Section 101 Motions to Dismiss").  The Section 101 Motions to Dismiss are, of course, potentially case-dispositive.

3.      All other defendants in the Presqriber cases except for Optum have now filed answers or otherwise responded to Presqriber's Complaints against them.[4]

4.      Of the 26 original cases, half have been resolved.  Seven cases have been settled and dismissed, and Presqriber has agreements (either signed agreements or agreements in principle) with six other defendants.

## ARGUMENT AND AUTHORITIES

**A.      The Claims of the '095 Patent Are Subject Matter Eligible Because They Claim Specific, Structured Systems That Were a True Improvement, and not Merely an "Abstract Idea."**

**1.      Relevant Legal Standards**

Under the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. ___, 134 S.Ct. 2347, 2357 (2014), a determination of subject matter eligibility under Section 101 involves a threshold issue, and then a two-step process.

---

[4] Defendants Cerner and Medent filed Rule 12 motions on other grounds (Cerner's was based on a pleading issue, and Medent's on a personal jurisdiction issue).  All other defendants answered.

At the threshold, the court looks to whether the claims of the patent fall within the categories of subject matter eligible for patent protection under Section 101.   Section 101 provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. §101; quoted in *Alice*, 134 S.Ct. at 2354.

If the threshold question is satisfied, the analysis turns to a two-step process, to determine whether the patent and claims at issue are patent-ineligible concepts – that is, laws of nature, natural phenomena, or abstract ideas – or whether they are patent-eligible applications of those concepts.  *Alice*, 134 S.Ct. at 2355 (citing *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. ___, 132 S.Ct. 1289 (2012)).

First, the court determines whether the claims at issue are directed to one of those patent-ineligible concepts.  *Id.*   In assessing subject matter eligibility, the Court must consider each claim as a whole, on a claim-by-claim basis.  *See Diamond v. Diehr*, 450 U.S. 175, 188, 101 S.Ct. 1048, 1058-59 (1981).  Here, as the Moving Defendants suggest in their motions, the only patent-ineligible concept potentially implicated would be that the claims of the '095 Patent comprise merely an "abstract idea" of "prescribing medication for a patient."  However, the claims of the '095 Patent are ***not*** merely an "abstract idea."  Instead, viewed as a whole, on a claim-by-claim basis, they describe a specific, structured system that has shown itself to be a tremendous benefit to medical care and has become a benchmark for healthcare.

## 2.      Overview of the '095 Patent

The '095 Patent is entitled "Interactive Medication Ordering System."  *See* Exhibit A ('095 Patent).  The application was filed in February 1995, and the '095 Patent issued in May 1998.  The '095 Patent contains 28 claims, all of which are ***system*** claims.  Claim 1 is the only

independent claim and there are 27 additional dependent claims. Each dependent claim adds limitations in addition to the limitations found in Claim 1, making each dependent claim narrower than Claim 1.

The '095 Patent is a prominent, pioneering patent in medical services field. This is evidenced in part by the extent to which the '095 Patent has been forward-cited as prior art in connection with the examination of subsequently-issued U.S. patents. The '095 Patent has been forward-cited in more than 200 subsequently-issued U.S. patents to date, including patents originally assigned to such prominent companies in the medical systems or services fields as Walgreen (21 times), Medco (16 times to Medco or a predecessor), Epic (10 times), Cerner (7 times), Greenway (7 times), General Electric (3 times), McKesson (3 times), Baxter (2 times), Johnson & Johnson (2 times), Siemens (2 times), Becton Dickinson, Quest Diagnostics, and WebMD. The '095 Patent is also of such sufficient prominence that it has been cited in numerous non-medical U.S. patents, including patents originally assigned to such prominent U.S. companies as Accenture, eBay, Ford, IBM and Microsoft. The '095 Patent has also been forward-cited 8 times in patents originally assigned to the University of Texas Board of Regents, and 3 times in patents originally assigned to the United States of America (as represented by the Secretary of the Army). And notwithstanding the fact that it was filed in 1995 and issued in 1998, the '095 Patent continues to be relevant today, as evidenced by the fact that the '095 Patent was forward-cited approximately 28 times in U.S. patents that issued in 2013 or 2014 to date.[5]

By way of example to show the detailed, structured system of the '095 Patent, consider Claims 13 through 15, which read as follows:

---

[5] All of the facts in this paragraph are taken from Presqriber's Complaint in each of these related cases. *See, e.g.*, Complaint (Dkt. No. 1) in Case No. 6:14-cv-440, at ¶12. These facts therefore must be taken as true under the relevant Rule 12 standards.

[Inherited from Claim 1]

A system for prescribing medication for a patient, said system comprising:

means for permitting a user to identify said patient;

database containing health and medication information regarding said patient;

means for automatically accessing said database and displaying to said user a list of all of the currently prescribed medications for said patient;

means for accepting and processing information regarding said medication prescriptions for said patient from the user including interpreter and reformatter means for processing said information received in a random sequence, and wherein said information includes at least one medication identifier and information selected from the group consisting of: recognition of medication ordered, recognition of medication dosage, recognition of medication route, recognition of medication frequency, recognition of medication duration, recognition of medication quantity, formulary drug items, non-formulary drug items, restrictions on prescriptions, dosage availability, maximum dosage recommended for said patient, dosage frequency, and drug use evaluations; and

means for communicating said medication prescription to a pharmacy.

13.  The system of claim 1 further comprising:

database containing health and medication information regarding medications and said patient;

means for alerting said user to potentially adverse situations as a result of said prescribed medications, based on information in said database.

14.  The system of claim 13 wherein said adverse situation is an allergic reaction to said prescribed medication.

15.  The system of claim 13 wherein said adverse reaction is an interaction between two or more prescribed medications.

*See* Exhibit A at cols. 20-21.

As can be seen, the system described in these claims has important, specific components, and it performs important, specific functions.  Without limitation, note that the system requires a database containing health and medication information about patients, it must be able to identify the patient and access the patient's health and medical information, it must be able to accept and

process prescription information, it must be able to process certain prescription information that is not required to be input in a strict, pre-defined order (*i.e.*, the "interpreter and reformatter means for processing said information received in a random sequence"), it must be able to communicate a prescription to a pharmacy, it must have a database with information regarding medications, and it must be able to identify potential adverse situations such as drug-allergy adverse situations and drug-drug interaction adverse situations and alert the user to these potentially dangerous situations.  All of these details – all of these components and capabilities – are important and required.  This is not abstract, and it is not just any old way to prescribe medicine.

### 3.    The Systems of the '095 Patent Represent a Valuable Advancement with Important Benefits.

The systems of the '095 Patent were a major advancement over the prior art.   The Abstract of the '095 Patent generally describes the advances of the invention as follows:  "This system includes an improved process for facilitating and automating the process of drug order entry…. The system includes a database containing medical prescribing and drug information which is both general and patient-specific.  The system also permits the user to view current and previously prescribed medications for any patient.  The system can alert the user to potentially adverse situations as a result of the prescribed medication based on information in the database…. The system streamlines the order entry process and makes information important to the drug ordering process easily available."  *See* Exhibit A at p. 1; *see also* col. 2:65 through 3:29.

The systems of the '095 Patent represent an advancement over manual prescriptions, with valuable, tangible benefits.  The U.S. Department of Health and Human Services confirms that "handwritten prescriptions, faxed notes, [and] calling in prescriptions" are all "at high risk of

error."  *See* Exhibit B.[6]  Because of and to try to eliminate such errors and avoid their consequences, the Leapfrog Group, a national nonprofit healthcare industry organization advocating for improvements in patient safety and hospital transparency, has made support for Computerized Physician Order Entry ("CPOE") one of its key original "leaps" in quality American healthcare.  *See* Exhibit E.  Research performed by The Leapfrog Group[7] found that more than one million serious medication errors occurs every year in US hospitals.  *See* Exhibit D.  "The errors include administration of the wrong drug, drug overdoses, and overlooked drug interactions and allergies.  They can occur for many reasons [associated with manual prescribing], including illegible handwritten prescriptions and decimal point errors.  Medication errors often have tragic consequences for patients.  Many serious medication errors result in preventable adverse drug events (ADEs), approximately 20% of which are life-threatening."  *Id.*

The Leapfrog Group describes the benchmark for CPOE as the system of the '095 Patent: "Computerized physician order entry (CPOE) systems are electronic prescribing systems that intercept errors when they most commonly occur – at the time medications are ordered.  With CPOE, physicians enter orders into a computer rather than on paper.  Orders are integrated with patient information, including laboratory and prescription data.  The order is then automatically checked for potential errors or problems.  Specific benefits of CPOE include: Prompts that warn against the possibility of drug interaction, allergy or overdose; Accurate, current information that helps physicians keep up with new drugs …; Drug-specific information that eliminates confusion

---

[6] Exhibits B, C, D and E are attached to the Declaration of Craig Tadlock.  They are submitted pursuant to Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the [Rule 12(b)(6)] motion.").  To the extent necessary to have all facts submitted or cited in this response to be considered to be true and viewed in the light most favorable to Presqriber, Presqriber offers to submit amended complaints containing these facts.

[7] The Leapfrog Group is a national nonprofit healthcare industry organization advocating for improvements in patient safety and hospital transparency.  *See* Exhibit E.  One of its key original "leaps" in quality American healthcare is support for Computerized Physician Order Entry (CPOE).  *Id.*  The Leapfrog Group's research has shown CPOE to reduce serious prescribing errors by more than 50%.  *Id.*

…; Improved communication between physicians and pharmacists; and Reduced healthcare costs due to improved efficiency." *Id.* The Leapfrog Group's research also showed the effectiveness of CPOE in accordance with the claims of the '095 Patent, finding that they "can be remarkably effective in reducing the rate of serious medication errors … CPOE reduced error rates by 55%... Rates of serious medication errors fell by 88%.... The prevention of errors was attributed to the CPOE system's structured orders and medication checks." *Id.* Another study "demonstrated a 70% reduction in antibiotic-related [adverse drug events] after implementation of decision support for these drugs." *Id.* Finally, the Leapfrog Group's research estimates "that implementation of CPOE systems at all non-rural U.S. hospitals could prevent three million adverse drug events each year." *Id.*

In addition, it would be impossible for a human to perform the systematic steps outlined by the '095 Patent. The human would have to have immediate access and perfect recall of the multitude of patients whose information was contained in the database, along with each and every medication in exact detail, including dosage, frequency, and route of administration, and each and every allergy of each patient. The current drug compendium contains more than 50,000 drugs with multiple dosage forms and strengths. Adverse drug-drug interactions number in the tens of thousands. Any suggestion that a human can perform this task accurately and systematically as described in the '095 Patent is entirely unrealistic.

### 4. The '095 Patent Does Not Preempt the Field of Prescribing Medications.

The '095 Patent certainly did not preempt the field of prescribing medication at the time it was issued; rather, its systems were new and novel, as the USPTO found when it issued the '095 Patent and allowed its claims. The specification of the '095 Patent describes its advantages

over not only manual practices, but also over the computer systems of the day, including "stand-alone" systems and "total hospital systems" used at the time.  *See* col. 1:30 through 2:61.

And despite the fact that CPOE in accordance with the claims of the '095 Patent has become the benchmark, the '095 Patent still does not preempt the field.  Even in recent years, manual prescriptions have represented the vast majority of all prescriptions written in the United States.  Data provided by the U.S. Department of Health and Human Services showed that only about 1% of all prescriptions in 2007 (35 million out of about 3.42 billion), and only about 2.3% of all prescriptions in 2008 (78 million out of about 3.42 billion) were sent electronically.  *See* Exhibit C.

Moreover, even aside from the computer-based systems existing in the prior art as described in the specification of the '095 Patent, there are other modern computer-based systems that are alternatives to the systems of the '095 Patent.  For example, as the U.S. Department of Health and Human Services explains, "E-Prescribing can be conducted either through an EHR system that has e-Prescribing capability or through a stand-alone e-Prescribing system."  *See* Exhibit B.  Further, the HHS Department notes that, "You can use e-Prescribing in conjunction with clinical decision support features[.]"  *Id.*

Importantly, the '095 Patent is directed solely to e-Prescribing through an EHR system with computerized physician order entry (CPOE) and clinical decision support. The '095 Patent does not cover e-Prescribing through a stand-alone e-Prescribing system.  The '095 Patent does not cover e-Prescribing without CPOE and clinical decision support.  And significantly, there are many electronic medical records systems (EMR) and EHR systems that ***do not*** include CPOE with clinical decision support.  Therefore, there are many "electronic prescribing" systems that would not infringe the '095 Patent, and thus, the '095 Patent truly does not preempt the field.

In other words, the systems of the '095 Patent are not the only way to prescribe medication, and not even the only way to electronically prescribe mediation; instead, they are the gold standard recommended by a leading industry group and encouraged by the U.S. Department of Health and Human Services.  The evidence is overwhelming that the systems of the '095 Patent are a specific, valuable solution and improvement, and not merely an unpatentable "abstract idea."

**5.      The Systems of the '095 Patent Are Not Abstract Ideas at All.**

The systems of the '095 Patent are different from the "abstract idea" claims that have been held unpatentable in recent cases in the Supreme Court, the Federal Circuit and in this District.  In each of these cases, the patent claims at issue were merely a ***description*** of a ***basic concept*** along with instructions to apply that concept on a computer.  *See Alice*, 134 S.Ct. 2347 (claims were merely a description of the concept of intermediated settlement, and instructions to apply those concepts on a computer); *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218 (2010) (same with respect to the concept of hedging against the financial risk of price fluctuations); *buySAFE, Inc. v. Google, Inc.*, ___ F.3d ___, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014) (longstanding contractual concept of a transaction performance guaranty); *Planet Bingo, LLC v. VKGS LLC*, ___ Fed.Appx. ___, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) (concept of managing and playing the game of Bingo); *Digitech Image Techs. v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) (process of organizing information through mathematical correlations; "so abstract and sweeping" as to cover any and all uses of a device profile); *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, ___ F.Supp.2d ___, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (concept of converting loyalty points from one vendor to another; analogous to currency conversion).  In addition, each of these cases involved ***method*** claims at their heart,

which imply described how to perform the abstract idea, with some adding corresponding computer program claims or system claims that were nothing more than taking the method claims and saying "apply it," which of course does not transform an unpatentable method into something patentable under *Alice*.

Here, by contrast and as shown above, the claims of the '095 Patent describe very useful systems, that is, a specific application and implementation, not merely the general application of an abstract concept.  There are no method claims.  This is unlike the abstract concepts at issue in these recent cases where patents were held to be ineligible.

In a recent case, the PTAB found a patent to be subject matter eligible because the PTAB determined that the patent's core concept, processing paper checks, was not an "abstract idea." *U.S. Bancorp v. Solutran, Inc.*, 2014 WL 3943913 (PTAB Aug. 7, 2014) (finding the patent at issue to be subject matter eligible, even though it the check processing claims at issue were merely method claims) (attached as Exhibit F).  The PTAB distinguished *Alice*, *Bilski* and other Supreme Court cases where patents had been found to be subject matter ineligible, because those patents were based on fundamental economic practices, mathematical formulas, and basic tools of scientific and technical work that were abstract ideas.  Importantly, the PTAB was careful to examine the claims of the patent at issue ***as a whole***.  *U.S. Bancorp*, 2014 WL 3943913 at *8 (citing *Alice*, 134 S.Ct. at 2361 n.3).  The PTAB noted that the Petitioner's arguments were not persuasive because they were directed to individual method steps ***without accounting sufficiently for the claims as a whole***.  *Id.*  The Petitioner's approach in *U.S. Bancorp* is similar to what the Moving Defendants attempt to do here – it is as if the Moving Defendants want to stop at the preamble, argue that "a system for prescribing medication for a patient" is the entirety of each claim of the '095 Patent, and be done with their analysis.  The Moving Defendants fail to

examine each and every limitation of the claims of the '095 Patent, individually and as a whole. When those specific limitations are considered, it becomes clear that they describe a particular system with meaningful limitations, and not merely an abstract idea.

**6.      Even If the '095 Patent Is an "Abstract Idea," It Contains an Inventive Concept, Additional Features, and Meaningful Limitations that Make It Subject Matter Eligible.**

Although the arguments above are focused on showing that the claims of the '095 Patent are not an unpatentable abstract idea, they also demonstrate that, even if the Court were to find that the core concept of the '095 Patent was merely an abstract idea, the claims contain an "inventive concept," "additional features," and "meaningful limitations" that would make the claims of the '095 Patent subject matter eligible.

Under this portion of the subject matter eligibility test, if the court determines that the patent claims comprise merely an "abstract idea," the court then asks, "what else is there in the claims before us?"  *Alice*, 134 S.Ct. at 2355.  To answer that question, the court considers the elements of each claim as a whole to determine whether the additional elements transform the claim into a patent-eligible application.  *Id.*  The Court in *Alice* described this as a search for an "inventive concept" and looks to whether the claim includes "additional features" beyond the "abstract idea."  *Id.* at 2355, 2357.  This Court has articulated that this analysis includes whether the claims at issue contain "meaningful limitations."  *See Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*, 2014 WL 1998053 at *4 (E.D. Tex. May 15, 2014) (Gilstrap, J.) (*analysis re-confirmed post-Alice in Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 2:13-cv-894, Dkt. No. 75 (E.D. Tex. July 21, 2014)); *accord TQP Development, LLC v. Intuit Inc.*, Case No. 2:12-cv-180, Dkt. No. 150 (E.D. Tex. Feb. 19, 2014) (Bryson, J., by designation) (claims directed to the fundamental concept of an unpatentable

abstract idea regain patent eligibility if the claim contains additional limitations on the scope of the invention's basic concept).

Again, consider Claims 13 through 15 of the '095 Patent, which read as follows:

[Inherited from Claim 1]

A system for prescribing medication for a patient, said system comprising:

means for permitting a user to identify said patient;

**_database_** **_containing health and medication information_** regarding said patient;

means for automatically accessing said database and **_displaying to said user a list of all of the currently prescribed medications_** for said patient;

**_means for accepting and processing information regarding said medication prescriptions_** for said patient from the user **_including interpreter and reformatter means for processing said information received in a random sequence_**, and wherein said information includes at least one medication identifier and information selected from the group consisting of: recognition of medication ordered, recognition of medication dosage, recognition of medication route, recognition of medication frequency, recognition of medication duration, recognition of medication quantity, formulary drug items, non-formulary drug items, restrictions on prescriptions, dosage availability, maximum dosage recommended for said patient, dosage frequency, and drug use evaluations; and

means for communicating said medication prescription to a pharmacy.

13.     The system of claim 1 further comprising:

**_database_** **_containing health and medication information regarding medications_** and said patient;

**_means for alerting said user to potentially adverse situations_** as a result of said prescribed medications, based on information in said database.

14.     The system of claim 13 **_wherein said adverse situation is an allergic reaction to said prescribed medication_**.

15.     The system of claim 13 **_wherein said adverse reaction is an interaction between two or more prescribed medications_**.

*See* Exhibit A (emphasis added, to indicate claim terms that comprise "additional features" and "meaningful limitations").

It is straightforward from the face of the claims of the '095 Patent and even a casual reading of the patent's specification that the claims involve an application rather than an abstract idea, and that they contain "additional features," "meaningful limitations," and an inventive system that is significantly more limited than simply "prescribing mediation for a patient."  *See, e.g., Alice*, 573 U.S. ___, 134 S.Ct. at 2357; *Rockstar*, 2014 WL 1998053 at *4.  The patent claims show a bounded universe of applications in terms of a specific system for electronic prescriptions through an EHR system, not an abstraction.  *Compare, e.g., Rockstar*, 2014 WL 1998053 at *4.

In addition, the portions of Claims 13, 14 and 15 that are emphasized above show that there are several separate limitations of each claim that provide "additional features" or "meaningful limitations."   Claimed limitations such as the database the provides all of the patient's currently prescribed medications, the means for processing information about prescriptions including medication identifiers and other critical information, the interpreter and reformatter means for processing information received in a random sequence, and the database containing the health and medication information to identify and alert the user to adverse situations such as drug-allergy adverse situations drug-drug adverse situations clearly articulate a system that is meaningfully limited relative to the general concept of "prescribing medication for a patient."  *Compare, e.g., Rockstar*, 2014 WL 1998053 at *4; *TQP Development*, Case No. 2:12-cv-180, Slip Op. at 14 (denying motion for summary judgment on Section 101 grounds where the patent claim at issue involved a specific system for modifying data, even though the invention did not result in physical transformation).  These limitations also further demonstrate that the "field" of "prescribing medication for a patient" is not preempted by the claims of the '095 Patent, individually or collectively.  *Compare, e.g., Alice*, 134 S.Ct. at 2354 (citing *Bilski*,

561 U.S. at 611-12) ("The concern that drives the exclusionary principle of Section 101 subject matter eligibility is one of pre-emption.").

The guidance of the Supreme Court in *Alice* is particularly important to remember when considering the '095 Patent, its limitations, its inventive concept, and its benefits:

> [W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law. At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. ***Applications of such concepts to a new and useful end, we have said, remain eligible for patent protection.*** Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and ***those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention***. The former would risk disproportionately tying up the use of the underlying ideas, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Alice*, 134 S.Ct. at 2354-55 (all internal citations and quotation marks omitted). The systems of the '095 Patent are applications to a new and useful end, they integrate building blocks into something more, and they should remain eligible for patent protection.

**B.     To the Extent the Court Is Not Prepared to Hold the '095 Patent Subject Matter Eligible at This Time, the Section 101 Motions to Dismiss Should Be Denied Because There Are Underlying Fact Issues and Claim Construction Issues, and Defendants Have Not Met Their Heavy Burden to Show Otherwise.**

Alternatively, to the extent the Court is not prepared to expressly find the '095 Patent to be subject matter eligible at this stage, the arguments put forth by Presqriber demonstrate that there are relevant fact issues, under the Rule 12 standards, that require the Section 101 Motions to Dismiss to be denied, and that there are claim construction issues that preclude the Court from granting the draconian relief requested by the Moving Defendants in the Section 101 Motions to Dismiss.

On a Rule 12 motion, the Court must "accept[] all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007).

Defendants have not satisfied their burden to show the absence of fact issues and claim construction issues such that the only plausible reading of the '095 Patent is that there is clear and convincing evidence of invalidity on the grounds of subject matter ineligibility.  *See Rockstar*, 2014 WL 1998053 at *3 ("If there are factual disputes about the patent's claims, however, the question of patentable subject matter should be reserved until claim construction."); *see also Dietgoal Innovations LLC v. Tyson Foods, Inc.*, Case No. 2:12-cv-338, Dkt. No. 59 (E.D. Tex. Mar. 25, 2013) (Gilstrap, J.) (denying defendant's motion to dismiss for failure to state a claim based on unpatentable subject matter).

Here, although Presqriber believes that it has shown conclusively that the '095 Patent is subject matter eligible, it has at least shown that there are a multitude of fact issues and likely claim construction issues present here that defeat the Section 101 Motions to Dismiss.

Some of the fact issues have been described above.  There are certainly fact issues as to relevant factors in the Section 101 analysis, such as the extent of preemption within the field, and the available alternatives.  Presqriber anticipates that further discovery and expert testimony on both infringement and invalidity will draw these facts out further.  Some of these issues have already come out in the related cases.  For example, defendant Athenahealth has stated in support of its counterclaims that its Accused Instrumentalities "do not have, either literally or under the doctrine of equivalents, the following element of claim 1: 'means for accepting and processing

information regarding said medication prescriptions for said patient from the user including interpreter and reformatter means for processing said information received in a random sequence …"  *See* Athenahealth Answer & Counterclaims (Case No. 6:14-cv-442, Dkt. No. 13 at ¶ 16). Presqriber does not agree with this statement.  But ***for purposes of the Rule 12(b)(6) motions only***, Presqriber is entitled to have the '095 Patent read in the light most favorable to Presqriber for purposes of the Section 101 issues.  And in that light, this pleading supports the notion that the '095 Patent would not preempt the field of electronic prescriptions and that there are alternatives for e-prescribing that would not be covered by the '095 Patent.  And this is a fact issue that goes into the Section 101 determination.

With respect to the fact issues underlying whether the claims of the '095 Patent are subject matter eligible, such as the scope of preemption and the available alternatives, Presqriber further notes that the light most favorable to Presqriber (for purposes of the Section 101 Motions to Dismiss only) would be the reading of the '095 Patent that gives rise to the narrowest scope of preemption and the most available alternatives.  Among other things, the non-infringement positions taken by defendants (including the Moving Defendants **and** all other defendants remaining in the case) would likely reveal these "narrowest" potentially plausible readings that would bear on the Court's analysis under the relevant Rule 12 standards.  Likewise, with respect to claim construction, at the moment ***for purposes of the Section 101 Motions to Dismiss only***, the claim construction most favorable to Presqriber would be the narrowest plausible constructions.  Presqriber anticipates that the narrowest potentially plausible constructions would be those proposed by defendants in their P.R. 4-2 and 4-3 disclosures, and in their responsive claim construction brief.  Generally, these are the constructions that defendants propose to avoid infringement.  Defendants have chastised Presqriber for not providing proposed constructions,

but this criticism is entirely misdirected – on a Rule 12 motion, it is the *defendants* who have the burden of coming forward with proposed constructions to show the absence of issues and invalidity by clear and convincing evidence.

Moreover, as the applicable case law holds, any decision that invalidates a properly-issued U.S. patent carrying a presumption of validity should at least be made in the context of the case as a whole, with a developed record on infringement, invalidity, and claim construction, so that the issues can be determined on a consistent and complete record.  In his recent opinion on Section 101 issues, Judge Bryson illustrated the importance of this point.  *See Loyalty Conversion*, 2014 WL 4364848.  Although the Court found the patent in suit in *Loyalty Conversion* to be Section 101-ineligible, it made sure to do so on a complete and consistent record.  The Court noted that the question of law presented by a Section 101 challenge "may contain underlying factual issues."  *Id.* at *4 (quoting *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013)).  The Court did not make its Section 101 ineligibility decision until it found that "the parties have not pointed to any factual issues that could affect the Court's analysis of the section 101 issue."  *Id.*  By contrast, here Presqriber has pointed to important factual issues that go to the Section 101 analysis, which preclude the granting of the Section 101 Motions to Dismiss.  Likewise, the Court reaffirmed the Federal Circuit precedent that "it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."  *Id.* (quoting *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012)).[8]

---

[8] When Presqriber sought discovery on the Section 101 issues through its Motion for Leave, several of its citations on the points in this paragraph were to the *Ultramercial* case.  Although *Ultramercial* was vacated by the Supreme Court, the underlying procedural principles remained valid.  In *Loyalty Conversion*, Judge Bryson indicated that *Ultramercial* retains no precedential effect.  *Loyalty Conversion*,

Accordingly, the Court "waited until after the claim construction hearing … to rule on the [Section 101] motion in order to ensure that there are no issues of claim construction that would affect the Court's legal analysis of the patentability issue." *Id.*  Again, the reasoning in *Loyalty Conversion* supports a denial of the Section 101 Motions to Dismiss at this time, but in the event the Court is concerned that the '095 Patent may be subject matter ineligible, it shows that Presqriber should have a fair opportunity to fully develop the record so that the Court can understand the facts and constructions most favorable to Presqriber.

Other courts have also reached a similar conclusion that the record should be fully developed before a presumptively valid U.S. Patent can be invalidated.  *See, e.g.*, *Macrosolve, Inc. v. Geico Ins. Agen., Inc.*, Case No. 6:12-cv-74-MHS-JDL (E.D. Tex. Feb. 5, 2013) ("Here, where the claims of unpatentabilty relate directly to the scope and meaning of a claim term, it is not only prudent, but necessary for the Court to conduct claim construction prior to determining the  patentability of the subject matter under 35 U.S.C § 101."); *Stoneeagle Servs., Inc. v. Davis*, Case No.  3:13-cv-894 (N.D. Tex. Aug. 14, 2013) (Dkt. No. 15) ("[C]laim construction will sharpen these  issues and offer more than two opposing takes on what the claims mean.  A ruling based on  briefing  alone  without evidence  invites pure guesswork. . . . As such, the  Court exercises  restraint over valor."); *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, Case No. 1:10-cv-1370, 2010 U.S.  Dist. LEXIS 120225, at *16 (N.D. Ohio Nov. 12, 2010) ("Because the record is inadequate, the  Court will not address defendants' specific arguments as to whether the patent meets the  machine-or-transformation test or claims an abstract idea.   Accordingly, defendants' motion to  dismiss must be denied."); *see also Bancorp Services, LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012)

---

2014 WL 4364848 at *10 n.5.  Accordingly, Presqriber withdraws any reliance on *Ultramercial* and instead relies upon the reasoning and authorities as described in *Loyalty Conversion* and the cases cited therein.  This issue should not impact the Court's analysis.

("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.").

**C.    Medhost's Motion to Dismiss on Indirect Infringement Should Be Denied.**

One defendant, Medhost, makes a half-hearted argument consisting of one paragraph with seven lines that Presqriber's claim of indirect infringement should be dismissed. Medhost's only argument is that there can be no indirect infringement where there is no direct infringement, and Presqriber has failed to specify that any person has directly infringed. Medhost is the only defendant in any of the 26 related cases to make this argument.

Medhost's contention is not correct. Presqriber specifically alleged that Medhost has induced infringement and continues to induce infringement by end users of the Accused Instrumentalities. *See* Complaint, Case No. 6:14-cv-454, Dkt. No. 1 at ¶ 14.

Accordingly, Medhost's motion to dismiss on indirect infringement should be denied.

## <u>CONCLUSION</u>

For the reasons set forth in this response brief, Presqriber respectfully requests that the Court find that the claims of the '095 Patent are subject matter eligible and therefore deny the Section 101 Motions to Dismiss. In the alternative, Presqriber requests that the Court deny the Section 101 Motions to Dismiss because there are fact issues and/or claim construction issues that defeat the motions. Finally, Presqriber respectfully requests that the Court grant Presqriber such other and further relief to which it is entitled.

Dated: September 22, 2014                    Respectfully submitted,


                                              /s/ Craig Tadlock
                                             Craig Tadlock
                                             State Bar No. 00791766
                                             John J. Harvey, Jr.
                                             State Bar No. 09179770
                                             Keith Smiley
                                             State Bar No. 24067869
                                             **TADLOCK LAW FIRM PLLC**
                                             2701 Dallas Parkway, Suite 360
                                             Plano, Texas 75093
                                             903-730-6789
                                             craig@tadlocklawfirm.com
                                             john@tadlocklawfirm.com
                                             keith@tadlocklawfirm.com

                                             *Attorneys for Plaintiff Presqriber, LLC*


### CERTIFICATE OF SERVICE

        I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system, in accordance with Local Rule CV-5(a)(3), on this the 22nd day of September, 2014.

                                              /s/ *Craig Tadlock*
                                             Craig Tadlock