## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **PRESQRIBER, LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | **Case No. 6:14-cv-440** |
| | § | |
| | § | |
| **AO CAPTIAL PARTNERS, LLC D/B/A** | § | |
| **PROGNOSIS INNOVATION** | § | |
| **HEALTHCARE** | § | |
| *Defendants.* | § | |

**AO CAPITAL PARTNERS, LLC d/b/a PROGNOSIS INNOVATION
HEALTHCARE'S  REPLY BRIEF IN SUPPORT OF ITS
<u>SECTION 101 MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

I. SUMMARY ................................................................................................................... 5

II. 12(B)(6) TIMING ........................................................................................................ 7

III. DISMISSAL IS APPROPRIATE UNDER RULE 12(b)(6) BECAUSE THE CLAIMS OF THE ASSERTED PATENTS ARE PATENT INELIGIBLE ......................................................... 9

a. The Claims Of The Asserted Patents Are Admittedly Abstract Ideas ................................... 9

b. The '095 Patent Does Not Contain an Inventive Concept, Additional Features, or Meaningful Limitations ................................................................................................ 11

IV. CONCLUSION ........................................................................................................... 15

# INDEX OF AUTHORITIES

**Cases**

*Bancorp Services, LLC v. Sun Life Assur. Co. of Canada (U.S.),* 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) ................................................................................................................................. 7

*Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 558 (2007) ................................................. 7

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,* No. 6:12-cv-674-LED, 2014 WL 923280, at *3 (E.D. Tex. Jan. 21, 2014) ........................................................................................ 7

*CyberFone Sys., LLC v. Cellco P'ship,* 885 F. Supp. 2d 710, 715 (D. Del. 2012) .......................... 6

*CyberFone Sys., LLC v. CNN Interactive Grp., Inc.* 2014 WL 718153 (Fed. Cir. Feb. 26, 2014)  6

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc. et. al,* 2014 WL 718153 (Fed. Cir. 2014) .......................................................................................................................................... 9, 11

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011) .......... 5, 6, 11

*Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1334 (Fed. Cir. 2012) ......................................... 9, 10

*Fort Props., Inc. v. Am. Master Lease, LLC,* 671 F.3d 1317 (Fed. Cir. 2012) ......................... 9, 11

*In re Am. Acad, Of Sci. Tech. Ctr.,* 367 F.3d 1359, 1369 (Fed. Cir. 2004) .................................... 9

*In re Bilski,* 545 F.3d 943, 951 (Fed. Cir. 2008) ............................................................................ 7

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 2014 U.S. Dist. LEXIS 53001 *11-13, (E.D. Va. 2014), *emphasis added, internal citations omitted.* ................................................ 5, 6

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,* 2:13-CV-655, 2014 WL 4364848 *5 - *14 (E.D. Tex. Sept. 3, 2014) ............................................................................................................ 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012) ....... 5, 10, 11

*OIP Techs., Inc. v. Amazon.com, Inc.,* C-12-1233 EMC, 2012 WL 2985118, *5 (N.D. Cal. Sept. 11, 2012) ....................................................................................................................................... 6

*SanDisk Corp. v. Kingston Tech Co., Inc.,* 695 F.3d 1348, 1361 (Fed. Cir. 2012). ...................... 10

*Tuxis Technologies, LLC v. Amazon.com, Inc.*, CV 13-1771-RGA, 2014 WL 4382446, *3 - *6 (D. Del. Sept. 3, 2014) ........................................................................................................ 11

*Ultramercial, Inc. v. Hulu,* 722 F.3d 1335, 1346 (Fed. Cir. 2013).............................................. 10

*Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc., et al.,* 6:12-CV-375, 2013 WL 7393173, *1 (E.D. Tex. Mar. 27, 2013).................................................................................................................. 7

# I. SUMMARY

The Court should not wait until after claim construction to dismiss this lawsuit. Claim construction is unnecessary, not required, and Presqriber, LLC has failed to show how claim construction would materially impact the §101 analysis. In its opposition, Presqriber does not dispute that abstract ideas are not patentable, nor does it dispute that a claim not properly tied to a computer is not patentable. Instead, Presqriber's opposition rests solely on the premise that all the asserted patent claims are not abstract ideas but are patentable because they claim specific, structured systems that are an improvement to prescription ordering. Not so.

The asserted patent claims make no mention of any specific computer implementation and they reference only obvious tasks that can be, and routinely have been, completed using pen and paper. At most, the claims make broad reference to generic computer elements, such as "computer display screen" or "database," or "voice, keyboard, pen and mouse."[1] But merely naming a few generic computer terms does not transform these abstract ideas into a specific computer implementation sufficient to be patentable subject matter under Section 101.

In a strikingly similar case, with patents involving similar language, a recent Federal Court commented:

> Neither the '137 nor the '382 patent contains patentable subject matter under Section 101. Neither satisfies either prong of the "machine-or-transformation" test nor otherwise contains a "patentable process" as that term is defined in § 100(b) or as established by the "guideposts" provided by Supreme Court precedents. . . . Nothing in the court's Claim Construction establishes patentability since, however the claim terms may be construed, **each patent consists of nothing more than the entry of data into a computer database, the breakdown and organization of that entered data according to some criteria…and the transmission of information derived from that entered data to a computer user, all through the use of conventional computer components, such as databases and processors, operating in a conventional manner**. There is no inventive technology or other inventive concept that authorizes the protections of a patent, such as improvement in the workings of the computer or the transmissibility of data or some

---

[1] *See* Claims 7, 12, 13, 20, 24 of '095 Patent

other transformation of data into something qualitatively beyond the informational content of the data entered, even though the data might be organized and manipulated to disclose useful correlations. Rather, these patents are 'drawn to mental process – i.e., an abstract idea,' and the patents simply do not 'add enough' by way of the disclosed applications of these abstract ideas.[2]

In *Intellectual Ventures*, the Plaintiff had obtained a patent on generic things such as "personalizing a website display." *Id., at \*10*. The Court found that the Plaintiff's claims did "not sufficiently apply this idea through any specific machine, but rather simply incorporated generic components that store, transmit, or display various types of information." *Id.* The *Intellectual Ventures* Court discounted Plaintiff's arguments that the use of general terms such as an "interactive interface," "database," and "website navigation data," met the standards set forth in *Mayo, Bilski*, and *CyberSource. Id., citing Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012); *Bilski v. Kappos, 130 S. Ct. 3218 (2010)*; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011). The Court also noted that "at most, the patents describe a more efficient system or method for performing tasks that could be done without a computer…in short this is nothing more than 'the mere manipulation or reorganization of data." *Intellectual Ventures I LLC,* LEXIS 53001 *at \*14*. The process itself, not merely the mathematical algorithm, must be new and useful. *Id*.

The present case is virtually <u>identical</u> to *Intellectual Ventures*. The claimed "system" does nothing more than compile data from known sources about certain patients and medications, reorganize it, and display it to a user. Plaintiff admits as much in its response. For example, on pages 7-8 of its response, Plaintiff notes that the '095 patent requires a database containing health and medication information about patients that is able to: (a) to identify the

---

[2] *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 2014 U.S. Dist. LEXIS 53001 *11-13, (E.D. Va. 2014), emphasis added, internal citations omitted*.

patient and access the patients' health and medical information; (b) accept and process prescription information; (c) process certain prescription information that is not required to be input in a strict, pre-defined order; (d) communicate a prescription to a pharmacy; and (e) identify potential adverse situations such as drug allergy and adverse interactions and alert the user to those situations. (Dkt. 22 p. 7-8). With these words, Plaintiff virtually *admits* its patent does nothing more than "mere manipulation or reorganization of data" aimed at writing prescriptions that can be done, and has historically been done, by a physician using a pen and paper. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011).

Nothing can change the fact that Plaintiff's patent claims nothing more than taking the abstract idea of reviewing a patient's medical records, determining if any adverse consequences will arise from a particular medication, writing a prescription, and calling that prescription into a pharmacy. There is simply nothing in Plaintiff's patent that transforms the prescription data "into something qualitatively beyond the information content of the data entered, even though the data might be organized and manipulated" into useful form. *Intellectual Ventures,* 2014 U.S. Dist. LEXIS 53001 at *11-13. Plaintiff has admitted, in both its pleadings and on the face of its patents, this fact. This Court should not permit Presqriber to completely preempt the entire commonplace business practice of writing prescriptions for patients with this "patent."

## II. 12(B)(6) TIMING

Presqriber suggests that claim construction is necessary before the Court can consider the motion to dismiss, but fails to propose any possible construction that needs to be determined or even how claim construction would materially impact the §101 analysis. *OIP Techs., Inc. v. Amazon.com, Inc.,* C-12-1233 EMC, 2012 WL 2985118, *5 (N.D. Cal. Sept. 11, 2012) (holding Plaintiff's failure "to explain how claims construction would materially impact the 101 analysis"

in anything but a conclusory manner does not preclude dismissal prior to claims construction); *CyberFone Sys., LLC v. Cellco P'ship,* 885 F. Supp. 2d 710, 715 (D. Del. 2012) (aff'd sub nom.); *CyberFone Sys., LLC v. CNN Interactive Grp., Inc.* 2014 WL 718153 (Fed. Cir. Feb. 26, 2014).

Even if it were not fatal that Plaintiff fails to explain how a claim construction would materially impact the §101 analysis, claim construction is also irrelevant because Defendant AO Capital has based its motion to dismiss on the premise that, for purposes of this motion, the Court may adopt claim construction most favorable to Presqriber. AO Capital makes this concession because there is no viable construction of a claim that could be read into the process of a specific device performing the steps of the claims in a way that could justify its patentability. (Dkt. 12 p. 7) *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,* No. 6:12-cv-674-LED, 2014 WL 923280, at *3 (E.D. Tex. Jan. 21, 2014). Here, there is *no* viable construction under which the claims at issue survive §101 scrutiny.

Presqriber is incorrect in suggesting that the §101 analysis must be deferred until after claim construction. The Northern District, the Federal Circuit, and the United States Supreme Court have held that claim construction is not required to precede a §101 analysis. *See, e.g., In re Bilski,* 545 F.3d 943, 951 (Fed. Cir. 2008); *Bilski v. Kappos,* 130 S. Ct. 3218, 3231 (2010); *Bancorp Services, LLC v. Sun Life Assur. Co. of Canada (U.S.),* 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *Uniloc U.S.A., Inc. v. Rackspace Hosting, Inc., et al.,* 6:12-CV-375, 2013 WL 7393173, *1 (E.D. Tex. Mar. 27, 2013).

Invalidity under §101 is a question of law. *See e.g., In re Bilski,* 545 F.3d at 951. The Court should therefore address this single dispositive issue of law now, "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic Corporation v.*

*Twombly,* 550 U.S. 544, 558 (2007) (*quoting* 5 Wright & Miller § 1216, at 233-34); *see also Parallel Networks, LLC v. Abercrombie & Fitch,* 2011 WL 3609292, *10 (E.D. Tex. Aug. 12, 2011).

### III. DISMISSAL IS APPROPRIATE UNDER RULE 12(b)(6) BECAUSE THE CLAIMS ARE PATENT INELIGIBLE

#### a. The Claims Of The Asserted Patents Are Abstract Ideas

Presqriber argues that the claims of the asserted patent are not abstract ideas because they describe "a specific, structured system that has shown itself to be a tremendous benefit to medical care and has become a benchmark for healthcare." (Dkt 22 p. 5.) However, the "specific structured system" consists nothing more than actions that can be completed by reviewing a patient's medical chart, using the physician's education, training, and experience, along with publically available information, to determine if there are any potential side effects to a specific prescription, and then writing a prescription on a prescription pad, or calling-in a prescription to a specific pharmacy. None of the claims include a computer or computer related element that would otherwise transform the abstract idea of writing and ordering prescriptions into patentable subject matter. In truth, every limitation of the claims can be performed by a human being using a patient's medical chart, a pen and paper, and a telephone. Presqriber admits that "[w]ith CPOE, physicians enter orders into a computer rather than on paper." (Dkt. 22 at p. 9).

Presqriber's response ignores the plain language of its claim and instead focuses on language in the specification that it believes to be the "invention" in the asserted patents. However, the law requires the §101 analysis to be based on the claims because it is the claims themselves that define the invention. *Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under §101, one must focus on the claims."). The

majority of the claims within the asserted patent do not require the use of a computer and instead merely target conceptual, previously-known, data-gathering steps. This process is simply not patent eligible subject matter.

Presqriber appears to argue that the language and figures from the specification show that the above-mentioned claims are directed to computer-implemented inventions. But in so doing, Plaintiff is effectively reading limitations from the patent specifications into the claims, which is not allowed. *See, e.g., In re Am. Acad, Of Sci. Tech. Ctr.,* 367 F.3d 1359, 1369 (Fed. Cir. 2004) ("We have cautioned against reading limitations into a claim from the preferred embodiment described in the specification.").

Presqriber also ignores the Federal Circuit's decisions in *Fort Props., Inc. v. Am. Master Lease, LLC,* 671 F.3d 1317 (Fed. Cir. 2012) and *Cyberfone Systems, LLC v. CNN Interactive Group, Inc. et. al,* 2014 WL 718153 (Fed. Cir. 2014). In *Fort Props,* the court found the claims to be patent ineligible because they merely involved breaking a method into the conceptual, known human steps of compiling information. *Fort Props.,* 671 F.3d at 1332. In *Cyberfone,* the Federal Circuit held that "[t]he idea of collecting information in a classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patentable." *Cyberfone Systems, LLC,* 2014 WL 718153 *2. The claims of the asserted patent here are patent ineligible for the same reasons.

Presqriber avers that it would be impossible for a human to perform all of the steps of the '095 patent; however, physicians have been performing the "system" claimed by the asserted patent as a part of their job for decades, i.e. writing prescriptions that do not cause adverse side effects and communicating the prescription to a pharmacy. In other words, Presqriber's claims

are invalid because they purport to preempt the idea of writing prescriptions. *See, e.g., Mayo Collaborative Servs. v. Prometheus Labs, Inc.,* 132 S. Ct. 1289, 1294 (2012).

> **b. The '095 Patent Does Not Contain an Inventive Concept, Additional Features, or Meaningful Limitations**

Presqriber focuses on claims that recite the use of a "database" to access and compare data to alert a user when certain criteria are met. (Dkt. 22 p. 15). But these claims fail to add any additional features or meaningful limitations to transform the asserted patent into patentable subject matter.

First, the limitations themselves merely require a database of the patient's medical records and a database of prescription drugs. These so-called "meaningful limitations" are merely mechanisms allowing for faster review and cross-checking of prescriptions and their side-effects. These mechanisms do not meaningfully limit the scope of the claims. *See, e.g., Dealertrack,* 674 F.3d at 1333-34.

Second, these limitations are not essential or central to the solution, but are rather insignificant pre- and post-solution activities. *Ultramercial, Inc. v. Hulu,* 722 F.3d 1335, 1346 (Fed. Cir. 2013) (A claim is not meaningfully limited "if it contains only insignificant or token pre- and post-solution activity – such as identifying a relevant audience, a category of use, field of use, or technological environment."); *Tuxis Technologies, LLC v. Amazon.com, Inc.*, CV 13-1771-RGA, 2014 WL 4382446, *3 - *6 (D. Del. Sept. 3, 2014) (claim 1 failed to satisfy §101 because it was directed to the abstract and long-practiced concept of upselling, and computer-implementation did not save the claim from invalidity because the computer "performs nothing more than purely conventional steps that are well-understood, routine, and previously known to the industry."); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,* 2:13-CV-655, 2014 WL 4364848 *5 - *14 (E.D. Tex. Sept. 3, 2014) (claims failed to satisfy §101 because they were

directed to the commonplace financial concept of currency conversion, the computer and Internet-related limitations were "purely functional" and "neither the limitation nor anything in the specification provides detail as to how that function is performed," and the limitations "can be performed by any generic computer with conventional programming.").

Presqriber contends that the claims' requirement of a database renders them patent eligible. To the contrary, implementing an unpatentable idea on a computer is "not a patentable application of that principle." *Mayo,* 132 S. Ct. at 1301; *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1376 (Fed. Cir 2011); *Fort Props., Inc.,* 671 F.3d at 1322-24; *Cyberfone Systems, LLC,* 2014 WL 718153, *2; *Accenture Global Servs., GmbH,* 728 F.3d at 1345 ("Accenture attempts to limit the abstract idea of claim 1 by applying it in a computer environment within the insurance industry. However, those types of limitations do not narrow, confine, or otherwise tie down the claim.").

Presqriber also cites *Alice* for the proposition that the claims' "databases" and alleged ability to compare prescription and patient data to reduce the error rate of prescription ordering are a "new and useful end" to prescription writing that make the asserted patent subject matter eligible. (Dkt. 22 at 17). However, there is nothing new about a doctor comparing a patient's medical information with various prescriptions and their side effects. Indeed, the Physicians' Desk Reference, which discloses known prescription information and drug interaction, has been published since ***1946***. None can gainsay that physicians have been using their knowledge and prescription publications to accurately prescribe medications, taking into account side effects and interactions, long before the asserted patent was issued.

Further, while the "databases" referenced in the asserted patent may be similar to those in *Ultramercial,* Presqriber has failed to show that the steps of the claims here require the "intricate

and complex computer programming" that was required by the claims in *Ultramercial.* 722 F.3d at 1350. To be sure, the asserted patent fails to mention how to implement the comparison of patients and prescriptions or how any other computer-related limitations would achieve the claimed invention. Importantly, the complexity of the implementing software or the level of detail found only in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method. *Accenture Global Servs.,* 728 F.3d at 1345.

Presqriber argues that claims 13, 14, and 15 provide "additional features," "meaningful limitations," and an "inventive system that is significantly more limited than simply 'prescribing medication for a patient.'" (Dkt. 22 p. 16). This marked-up chart of claims 1 and 13, where the patented claim is deleted and replaced with the pre-existing human operated counterpart, illustrates that the asserted patent is nothing more than the abstract concept of prescribing medications to a patient:

| '095 Patent Independent Claim 1 (marked up) |
|---|
| A system for prescribing medication for a patient, said system comprising:<br><br>*Means* for permitting a user to ~~identify said patient~~ view a patient's medical chart;<br><br>~~*Database* containing health and medical information regarding said patient~~ Patient's medical chart;<br><br>~~*Means* for automatically accessing said database and displaying to said user a list of all of the currently prescribed medications for said patient~~ view a patient's medical chart;<br><br>~~*Means* for accepting and processing information regarding said medication prescriptions for said patient from the user including interpreter and reformatter means for processing said information received in a random sequence, and wherein said information includes at least one medication identifier and information selected from the group consisting of: recognition of medication ordered, recognition of medication dosage, recognition of medication route, recognition of medication frequency, recognition of medication duration, recognition of medication quantity, formulary drug items, non-formulary drug items, restrictions on prescriptions, dosage availability, maximum dosage recommended for said patient, dosage frequency, and drug use evaluations~~ look up in Physicians' Desk Reference for prescription information; and |

| |
|---|
| ~~*Means* for communication said medication prescription to a pharmacy~~ <mark>Physician writes a prescription using a pad of paper and/or calls in prescription to a pharmacy.</mark> |

| '095 Patent Independent Claim 13 (marked up) |
|---|
| The system of claim 1 further comprising:<br><br>~~Database containing health and medication information regarding medications and said patient~~ <mark>Patient's medical chart</mark>;<br><br>~~Means for altering said user to potentially adverse situations as a result of said prescribed medications, based on information in said database~~ <mark>Reviewing prescription medication literature and Physician's training and experience as a licensed physician to determine any adverse side-effects.</mark> |

Claims 14 and 15 of the asserted patent do nothing more than identify the specific adverse situations of an allergic reaction or an adverse interaction noted in Claim 13. These limitations can also be accomplished, and have been for years, by using various literature and the physician's training and experience. Even the claims not discussed by Plaintiff, each and every one of them, fail for the same reasons. For instance, Claim 9 permits a user (doctor) to modify an earlier prescription − there is nothing transformative about Claim 9 or that cannot also be accomplished with a pen and paper. Claim 11 allows a doctor to communicate with the system using a pen. There is nothing novel or transformative about allowing different generic interfaces with the system (whether it is a mouse, keyboard, or pen). Claim 26 outputs information about potential adverse reactions to the user, doing nothing more than reorganized data from the Physician's Desk Reference and displaying it in a generic manner. Just as in *Intellectual Ventures,* each claim consists of nothing more than the entry of data into a computer database, the breakdown and organization of that entered data according to some criteria, and the

transmission of information derived from that entered data to a computer user, all through the use of conventional computer components operating in a conventional manner.

## IV. CONCLUSION

Simply stated, all of the claims of the asserted patent are not patent eligible. The asserted patent's claims fail the machine-or-transformation test, fail to add anything transformative to the proposed invention. The asserted claims are not meaningfully limited by computer-related elements, and thus are directed to the abstract idea of prescribing medications, an abstract idea that is not patentable as a matter of law. Presqriber fails the standards set in *Alice* to show that the asserted patent contains additional features or meaningful limitations. As a result, the Court should dismiss Presqriber's Complaint for failure to state a claim upon which relief can be granted.

      Respectfully submitted,

      */s/ Stewart H. Thomas*
      Stewart H. Thomas (Lead Counsel)
      State Bar No. 19868950
      E-Mail: sthomas@hallettperrin.com
      Barrett C. Lesher
      State Bar No. 24070137
      E-Mail: blesher@hallettperrin.com
      HALLETT & PERRIN, P.C.
      1445 Ross Ave., Suite 2400
      Dallas, TX 75202
      Telephone: 214. 922.4132
      Facsimile: 214. 922.4142

      and

      Christopher B. Welsh
      State Bar No.: 24049538
      E-Mail: Cwelsh@stoddardwelsh.com
      STODDARD AND WELSH, P.L.LC.
      8150 N. Central Expressway
      Suite 1150
      Dallas, Texas 75206
      Telephone: 214. 884.4900
      Facsimile: 214. 884.4910

      ***Counsel for AO Capital Partners, LLC d/b/a Prognosis Innovation Healthcare***

## CERTIFICATE OF SERVICE

    I hereby certify that on October 2, 2014, a copy of the foregoing document was electronically filed with the Clerk of the Courts by using the ECF system and forwarded to all counsel through the Court's ECF system.

      */s/ Stewart H. Thomas*
      Stewart H. Thomas