**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| **PRESQRIBER, LLC,** | |
| Plaintiff, | Case No. 6:14-cv-440 |
| v. | **CONSOLIDATED LEAD CASE** |
| **AO CAPITAL PARTNERS LLC d/b/a PROGNOSIS INNOVATION HEALTHCARE, *et al.*,** | **JURY TRIAL DEMANDED** |
| Defendants. | |
| **NEWCROP, LLC,** | |
| **v.** | Case No. 6:14-cv-539 |
| **PRESQRIBER, LLC** | |

**PLAINTIFF PRESQRIBER'S RESPONSE IN OPPOSITION**
**TO NEWCROP'S MOTION FOR SUMMARY JUDGMENT**

Craig Tadlock
State Bar No. 00791766
John J. Harvey, Jr.
State Bar No. 09179770
Keith Smiley
State Bar No. 24067869
**TADLOCK LAW FIRM PLLC**
2701 Dallas Parkway, Suite 360
Plano, Texas 75093
903-730-6789
craig@tadlocklawfirm.com
john@tadlocklawfirm.com
keith@tadlocklawfirm.com

*Attorneys for Plaintiff Presqriber, LLC*

Plaintiff Presqriber, LLC ("Presqriber") hereby files this Response in Opposition to the Motion for Summary Judgment filed by NewCrop, LLC ("NewCrop"), and in support thereof respectfully shows the Court as follows:

**INTRODUCTION**

U.S. Patent No. 5,758,095 (the "'095 Patent") contains claims that describe a specific, effective, structured Interactive Medication Ordering System.  The '095 Patent was duly issued by the United States Patent and Trademark Office, in full compliance with Title 35 of the United States Code.  It is entitled to a presumption of validity.

In this Response Brief, Presqriber shows that the claims of the '095 Patent are subject matter eligible because they do not simply describe an "abstract idea" of "prescribing medication for a patient" but instead go well beyond the "abstract idea" to claim a specific, effective, interactive, structured **_system_** for the ordering of prescription medication that contains important features to ensure the accuracy and appropriateness of the medications prescribed for the patient.

To the extent the Court is not prepared to expressly find the '095 Patent to be subject matter eligible at this stage, the arguments put forth by Presqriber demonstrate that there are genuine issues of material fact,[1] under the relevant summary judgment standards, that require this motion to be denied, and that there are claim construction issues that preclude the Court from granting the draconian relief requested by NewCrop in its summary judgment motion.

---

[1] The presence of genuine issues of material fact, of course, defeats a summary judgment motion under the relevant standards.  In addition, Presqriber notes that in order to invalidate a patent, invalidity (and in particular, all underlying fact issues) must be shown by clear and convincing evidence.  *See, e.g., Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2242 (2011) ("§ 282 requires an invalidity defense to be proved by clear and convincing evidence"); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003) ("A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence.").

NewCrop certainly has not met its burden in this case.  NewCrop has not shown that the '095 Patent is subject matter ineligible under *Alice* or any other relevant authority, it has not shown the absence of genuine issues of material fact, and it has not made any case for claim constructions that render the '095 Patent subject matter ineligible as a matter of law.  Instead, in its motion, NewCrop has taken a misguided and superficial analysis to try to persuade the Court that the '095 Patent is merely an "abstract idea," which ignores the limitations of the claims taken individually and as a whole and the specific structure of the claims, because NewCrop could not possibly win its motion if it undertook a close, meaningful analysis of the actual issues. NewCrop ignores the specification, the preferred embodiments, and the other traditional factors that underscore, concretely, what the claims cover.

In evaluating NewCrop's motion, it is important to remember that nothing about the Supreme Court's opinion in *Alice* or any recent Federal Circuit or District Court case on Section 101 subject matter eligibility has changed the presumption of validity.  Likewise, nothing about *Alice* or any recent Federal Circuit or District Court case has changed the traditional summary judgment standards in any way – the movant must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must draw all reasonable inferences in favor of the non-movant.  *Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 880 (Fed. Cir. 1998).  Finally, as recently reaffirmed by Judge Bryson sitting by designation in this District in the *Loyalty Conversion* case, nothing about *Alice* or any recent Federal Circuit case changes the principles that (a) the question of law presented by a Section 101 challenge may contain underlying factual issues, and (b) that it is ordinarily desirable and often necessary to resolve claim construction disputes prior to a § 101 analysis, because the determination of patent eligibility requires a full

understanding of the basic character of the claimed subject matter.  *Loyalty Conversion Sys.*
*Corp. v. American Airlines, Inc.*, __ F.Supp.2d ___, 2014 WL 4364848 (E.D. Tex. Sept. 3,
2014).

In sum, the claims of the '095 Patent describe specific, efficient, valuable, structured
systems for interactive medication ordering, and not a mere "abstract idea."  NewCrop has not
demonstrated that there is clear and convincing evidence that the '095 Patent is subject matter
ineligible.  NewCrop's motion for summary judgment should be denied.

## PROCEDURAL BACKGROUND

1.      On May 8, 2014, Presqriber filed 26 cases based on the '095 Patent (Case Nos.
6:14-cv-439 through -464, consecutively; the "Presqriber Cases").   Generally, the accused
instrumentality for each defendant comprises Electronic Health Record ("EHR") systems that
include interactive prescription medication ordering systems in accordance with one or more
claims of the '095 Patent.  (In its Complaints, Presqriber identifies the accused EHR systems as
those that have achieved ONC-ATCB Certification for "Ambulatory" and/or "Inpatient" medical
practices, because those certifications contain requirements that show that compliant systems
meet many  of the limitations of Claims 1, 13, 14 and 15 of the '095 Patent.)

2.      On June 10, 2014, NewCrop filed a declaratory judgment action against
Presqriber (Case No. 6:14-cv-539; the "NewCrop DJ Case"), asserting that NewCrop is entitled
to declaratory judgments that NewCrop does not infringe the '095 Patent, that the '095 Patent is
invalid, and that the '095 Patent is unenforceable due to laches.

3.      Certain Defendants in the Presqriber Cases filed motions to dismiss under Fed. R.
Civ. P. 12(b)(6), asserting that all claims of the '095 Patent are subject matter ineligible under 35

U.S.C § 101 (the "Section 101 Motions to Dismiss").  The Section 101 Motions are fully briefed and ripe for decision by the Court.

4.      On October 24, 2014, this Court consolidated all of the remaining Presqriber Cases and the NewCrop DJ Case into this Lead Case, for all pretrial purposes excluding venue.  (Dkt. No. 26)  This Case is set for a Scheduling Conference with the Court on December 10, 2014.  (Dkt. No. 28)

5.      On November 3, 2014, NewCrop filed its motion for summary judgment.  NewCrop's motion is substantively the same as the previously-filed and briefed Section 101 Motions to Dismiss.

6.      The NewCrop motion for summary judgment and the Section 101 Motions to Dismiss are, of course, potentially case-dispositive.

## RESPONSE TO STATEMENT OF THE ISSUES

The question presented is whether the '095 Patent is invalid as subject matter ineligible under 35 U.S.C. § 101, as a matter of law.  Presqriber demonstrates herein that the '095 Patent is subject matter eligible under applicable law, that NewCrop has not met its burden to show that it is entitled to judgment as a matter of law, and that at a minimum there are genuine issues of material fact that defeat summary judgment.

## RESPONSE TO STATEMENT OF FACTS
## AND DISCUSSION OF DISPUTED MATERIAL FACTS

**A.      Response to NewCrop's "Statement of Undisputed Material Facts"**

1.      Notwithstanding the fact that NewCrop's Statement #1 is not supported by any evidence, Presqriber does not dispute this statement.

2.      Presqriber does not dispute NewCrop's Statement #2.

3.     Presqriber disputes NewCrop's Statement #3, wherein NewCrop incorrectly asserts that "[t]he 095 patent is a '***system and method***' …" (emphasis added).  The '095 Patent contains only ***system*** claims, not method claims.   NewCrop's improper attempt to include Statement #3 as an "undisputed material fact" feeds into a misperception that NewCrop attempts to create with respect to the '095 Patent.  NewCrop tries to create the impression that the '095 Patent is simply a recitation of method steps that would cover all instances of doctors prescribing medicine to patients.  This is incorrect.  As discussed in much more detail below, the claims of the '095 Patent claim specific, structured systems that are not merely an "abstract idea," do not preempt or cover all methods of prescribing medicine, and were a true improvement over prior art systems with tangible, life-saving results.  NewCrop's foundational mischaracterization error underlies all of its arguments, and once corrected, NewCrop's arguments fail.

4.     Presqriber disputes NewCrop's Statement #4, wherein NewCrop incorrectly asserts that "[t]he words 'network,' 'software,' 'program,' or 'instruction' do not appear in the 095 patent."  This statement is entirely false, and it is misleading in a way that further highlights the misperception that NewCrop attempts to create with respect to the '095 Patent.  Each of these terms appears in the '095 Patent.  At least three of these terms are used in the '095 Patent in a way that expressly sheds light on the systems claimed by the '095 Patent and the scope of those claims, and the references would be relevant to claim construction issues:

(a)     The word "network" is used twice in the '095 Patent (*see* col. 1:11 and col. 1:49), including one instance where it is used in connection with describing the invention of the '095 Patent:   "The present invention relates to a medication ordering system and more particularly to a system that is both flexible and interactive and designed for rapid drug and prescription order entry ***and which has integrated into the system a resource and***

*communication* **network** providing the user with drug, patient, and prescribing information." *See* '095 Patent (Ex. A) at 1:7-12 (emphasis added).

(b)     The word "software" is used in several places in the '095 Patent, a few times to describe prior art, and more importantly, twice where it is used in connection with describing the invention of the '095 Patent:

(i)     At the beginning of its "Summary of the Invention," the '095 Patent states:  "The system includes an improved process for allowing the prescriber *to identify the patient using interactive* **software**." *See* '095 Patent at 2:66 through 3:1 (emphasis added).

(ii)    At the beginning of the "Detailed Description of the Preferred Embodiments," the '095 Patent states:  "The pharmacy of the present invention has two primary embodiments…. In both versions *the* **software** is designed to accommodate customary medication ordering styles and practices in lieu of rigid fixed format entry (*i.e.*, selecting in sequence the drug, dose, route, frequency).  That is, the pharmacy system of the present invention will recognize random order entry format (*e.g.*, selecting in no particular sequence the dose, drug, frequency, route, etc.) to facilitate user friendliness."  *See* '095 Patent at 6:24-35 (emphasis added).

(c)     The word "program" is also used in several places in the '095 Patent in connection with describing the invention of the '095 Patent or components thereof:

(i)     In the "Summary of the Invention," the '095 Patent states:  "The system *also includes a* **program** for accessing the database and displaying to the prescriber a list of active and inactive medications for the client."  *See* '095 Patent at 3:8-10 (emphasis added).

(ii)    In the "Brief Description of the Drawings" section of the '095 Patent, two of the descriptions of the figures include the word "program."  *See* '095 Patent at

5:38-39 ("FIG. 51 depicts the opening screen for **the outpatient/clinic program** utilizing the present invention."); and 6:4-6 ("FIG. 64 depicts the message screen format accessed through **the table/file maintenance program** utilizing the present invention.") (emphasis added).

(iii)    In the "Detailed Description of the Preferred Embodiments" section, the '095 Patent describes a series of "programs" used by the claimed system:  "The prescriber is freed from many tasks normally associated with the medication order process such as product formulation selection, billing qualifiers, and drug administration timing.  **These tasks are accomplished by a series of programs**, invisible to the user, which provide functions such as automatic product selection based on route of administration, as well as product compounding and formulation."  *See* '095 Patent at 6:44-54 (emphasis added; parentheticals omitted throughout).

(d)    Contrary to NewCrop's assertion, the word "instruction" also appears in the '095 Patent.  *See* '095 Patent at 7:37, 12:38, and 19:47.

5.    Presqriber disputes NewCrop's Statement #5, wherein NewCrop incorrectly asserts that there are only two mentions of computer related items in the '095 Patent.  The discussion of Statement #4 above demonstrates that there are innumerable references to computer related items in the '095 Patent.  Moreover, every single figure in the '095 Patent contains references to computer-related items: (a) Figure 1 contains numerous references to computer-related items such as relational databases, an order reformatter and interpreter, user interface, keyboard and mouse, and modules; and (b) Figures 2 through 48, and Figures 50 through 71 show computer displays and interfaces; and (c) Figures 49a through 49l (forty-nine L) contain numerous references to computer-related items such as displays, selection and profile screens, databases, and files.

6.      Presqriber does not dispute NewCrop's Statement #6.

7.      Presqriber does not dispute NewCrop's Statement #7.

**B.      Response to Other Statements Embedded in NewCrop's Briefing that NewCrop Incorrectly Describes as Being Undisputed Facts**

Throughout its briefing, NewCrop makes certain statements that it asserts represent undisputed facts, either expressly or implicitly.  As with several the statements discussed above, most of these statements mischaracterize the true nature and scope of the '095 Patent, in an attempt to shoehorn NewCrop's arguments into favorable case law.  Presqriber expressly disputes these supposed "factual assertions" made by NewCrop:

1.      NewCrop represents that "[n]one of the asserted claims identifies or claims any new software or computer technology" and "[t]he majority of the claimed steps[2] in the 095 Patent do not even mention equipment or machinery."  *See* NewCrop Motion at 12, 18.  Presqriber disputes these statements, as supported by much of the discussion in Section A above, and as further supported by the discussion in Section B(3) of Presqriber's "Argument and Authorities" below and the evidence cited therein.  To the contrary, the '095 Patent identifies and claims software and computer technology, and the systems of the '095 Patent were a major, valuable advancement over the prior art, with important benefits.

2.      NewCrop states that "the 095 Patent also does not require a substantial or meaningful role for the computer" and that "the claims of the 095 Patent fundamentally do not need a computer[.]"  *See* NewCrop Motion at 14, 16.  Again, Presqriber disputes these statements, as described at various places in this response brief and supported by the evidence cited therein.

---

[2] By using the word "steps" here, NewCrop again inaccurately tries to connote that the claims at issue are method claims, which of course they are not.  What NewCrop characterizes as "steps" are actually claim limitations, which are part of the claimed ***systems*** of the '095 Patent.

3.      NewCrop states that (a) "there is no language contained in the claimed steps of the 095 Patent that add [sic] any meaningful limitation because they are merely generic data gathering and display steps inherent in any prescription writing process;" (b) "there is no genuine issue of material fact as to whether or not the 095 Patent includes any meaningful limitations to the field of prescribing medicine;" and (c) "there is no genuine issue of material fact as to whether or not the 095 Patent adds anything to the field of prescribing medicine."  *See* NewCrop Motion at 16, 17.  Presqriber disputes these statements, as discussed in more detail above and in "Argument and Authorities" Sections B(2), B(3), and B(6) below and the evidence cited therein. Those sections of Presqriber's response discuss the structured systems of the '095 Patent and their specific components, the valuable advancements and benefits of the '095 Patent, and the additional features and meaningful limitations of the claims of the '095 Patent.

**C.      Additional Disputed Genuine Issues of Material Fact Regarding Pre-Emption**

In *Alice*, the Supreme Court squarely stated that "[t]he concern that drives the exclusionary principle of Section 101 subject matter eligibility is one of pre-emption."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S.Ct. 2347, 2354 (2014) (citing *Bilski v. Kappos*, 561 U.S. 593, 611-12, 130 S.Ct. 3218 (2010)).  The extent of pre-emption is a fact issue. *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1343 (Fed. Cir. 2013) (how much of the field is "tied up" by the claim – by definition will involve historic facts: identifying the "field," the available alternatives, and preemptive impact of the claims in that field).[3]

NewCrop, at least implicitly and perhaps expressly, states as a fact that the '095 Patent entirely pre-empts the field of electronic prescriptions.  *See, e.g.*, NewCrop Motion at 2 ("At its

---

[3] The *Ultramercial* case was subsequently *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 134 S.Ct. 2870 (U.S. June 30, 2014) and then *reversed* in *Ultramercial, Inc. v. Hulu, LLC*, __ F.3d __, 2014 WL 5904902 (Fed. Cir. Nov. 14, 2014); however, the proposition that the extent of pre-emption is a fact issue should be uncontroversial.

core, the 095 Patent does nothing more than claim a patent on the long-practiced abstract idea of prescribing medication for a patient" and "the 095 Patent claims are not patent-eligible because the claimed subject matter … impermissibly preempts the field of prescribing medication."). Presqriber disputes these statements.  The systems of the '095 Patent do not pre-empt the field of prescribing medication, as discussed in more detail in Section B(4) of the "Argument and Authorities" and supported by the evidence cited therein.

## ARGUMENT AND AUTHORITIES

A.    **NewCrop's Motion Should Be Denied Because NewCrop Does Not Establish or Even Propose Any Claim Constructions.**

In its motion, NewCrop does not establish the construction of any limitation of any claim of the '095 Patent, and it does not even propose any claim constructions.  Because claim construction is a matter of law, by not establishing or even proposing any constructions, NewCrop has failed at the threshold to satisfy Fed. R. Civ. P. 56(a), which requires NewCrop to demonstrate that it is entitled to judgment as a matter of law.  The Court should deny NewCrop's motion on that basis alone.[4]

B.    **The Claims of the '095 Patent Are Subject Matter Eligible Because They Claim Specific, Structured Systems That Were a True Improvement, and not Merely an "Abstract Idea."**

1.    **Relevant Legal Standards**

Under the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. __, 134 S.Ct. 2347, 2357 (2014), a determination of subject matter eligibility under Section 101 involves a threshold issue, and then a two-step process.

---

[4] In an abundance of caution, however, and without waiving this argument, Presqriber is briefing this motion as if NewCrop contends that the '095 Patent is subject matter ineligible under any plausible construction, which basically would place the NewCrop motion on the same procedural footing as the Section 101 Motions to Dismiss.  Presqriber demonstrates herein that under proper (and certainly plausible) constructions of the terms of the '095 Patent, it is clearly subject matter eligible.

At the threshold, the court looks to whether the claims of the patent fall within the categories of subject matter eligible for patent protection under Section 101.   Section 101 provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. §101; quoted in *Alice*, 134 S.Ct. at 2354.

If the threshold question is satisfied, the analysis turns to a two-step process, to determine whether the patent and claims at issue are patent-ineligible concepts – that is, laws of nature, natural phenomena, or abstract ideas – or whether they are patent-eligible applications of those concepts.   *Alice*, 134 S.Ct. at 2355 (citing *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 566 U.S. __, 132 S.Ct. 1289 (2012)).

First, the court determines whether the claims at issue are directed to one of those patent-ineligible concepts.   *Id.*   In assessing subject matter eligibility, the Court must consider each claim as a whole, on a claim-by-claim basis.   *See Diamond v. Diehr*, 450 U.S. 175, 188, 101 S.Ct. 1048, 1058-59 (1981).   Here, as the Moving Defendants suggest in their motions, the only patent-ineligible concept potentially implicated would be that the claims of the '095 Patent comprise merely an "abstract idea" of "prescribing medication for a patient."   However, the claims of the '095 Patent are ***not*** merely an "abstract idea."   Instead, viewed as a whole, on a claim-by-claim basis, they describe a specific, structured system that has shown itself to be a tremendous benefit to medical care and has become a benchmark for healthcare.

## 2.    Overview of the '095 Patent

The '095 Patent is entitled "Interactive Medication Ordering System."  *See* Exhibit A ('095 Patent).[5]  The application was filed in February 1995, and the '095 Patent issued in May 1998.  The '095 Patent contains 28 claims, all of which are ***system*** claims.  Claim 1 is the only independent claim and there are 27 additional dependent claims.  Each dependent claim adds limitations in addition to the limitations found in Claim 1, making each dependent claim narrower than Claim 1.

The '095 Patent is a prominent, pioneering patent in medical services field.  This is evidenced in part by the extent to which the '095 Patent has been forward-cited as prior art in connection with the examination of subsequently-issued U.S. patents.  The '095 Patent has been forward-cited in more than 230 subsequently-issued U.S. patents to date, including patents originally assigned to such prominent companies in the medical systems or services fields as Walgreen (22 times), Medco (16 times to Medco or a predecessor), Epic (10 times), Greenway (9 times), Cerner (7 times), General Electric (3 times), McKesson (3 times), Siemens (3 times), Baxter (2 times), Johnson & Johnson (2 times), WebMD (2 times), Becton Dickinson, and Quest Diagnostics.  The '095 Patent is also of such sufficient prominence that it has been cited in numerous non-medical U.S. patents, including patents originally assigned to such prominent U.S. companies as Accenture, eBay, Ford, IBM and Microsoft.  The '095 Patent has also been forward-cited 8 times in patents originally assigned to the University Of Texas Board Of Regents, and 3 times in patents originally assigned to the United States of America (as represented by the Secretary of the Army).  And notwithstanding the fact that it was filed in 1995 and issued in 1998, the '095 Patent continues to be relevant today, as evidenced by the fact that

---

[5] Exhibits A through _____ are attached to the Declaration of Craig Tadlock.  Each exhibit will be referenced simply by its Exhibit designation, without referring to the Tadlock Declaration each time.

the '095 Patent was forward-cited approximately 25 times in U.S. patents that issued in 2013 and 28 times in U.S. patents that issued in 2014 to date.  *See* Exhibits B & C to the Declaration of Craig Tadlock.

By way of example to show the detailed, structured system of the '095 Patent, consider Claims 13 through 15, which read as follows:

[Inherited from Claim 1]

A system for prescribing medication for a patient, said system comprising:

means for permitting a user to identify said patient;

database containing health and medication information regarding said patient;

means for automatically accessing said database and displaying to said user a list of all of the currently prescribed medications for said patient;

means for accepting and processing information regarding said medication prescriptions for said patient from the user including interpreter and reformatter means for processing said information received in a random sequence, and wherein said information includes at least one medication identifier and information selected from the group consisting of: recognition of medication ordered, recognition of medication dosage, recognition of medication route, recognition of medication frequency, recognition of medication duration, recognition of medication quantity, formulary drug items, non-formulary drug items, restrictions on prescriptions, dosage availability, maximum dosage recommended for said patient, dosage frequency, and drug use evaluations; and

means for communicating said medication prescription to a pharmacy.

13.     The system of claim 1 further comprising:

database containing health and medication information regarding medications and said patient;

means for alerting said user to potentially adverse situations as a result of said prescribed medications, based on information in said database.

14.     The system of claim 13 wherein said adverse situation is an allergic reaction to said prescribed medication.

15.     The system of claim 13 wherein said adverse reaction is an interaction between two or more prescribed medications.

*See* Exhibit A at cols. 20-21.

As can be seen, the system described in these claims has important, specific components, and it performs important, specific functions.  Without limitation, note that the system requires a database containing health and medication information about patients, it must be able to identify the patient and access the patient's health and medical information, it must be able to accept and process prescription information, it must be able to process certain prescription information that is not required to be input in a strict, pre-defined order (*i.e.*, the "interpreter and reformatter means for processing said information received in a random sequence"), it must be able to communicate a prescription to a pharmacy, it must have a database with information regarding medications, and it must be able to identify potential adverse situations such as drug-allergy adverse situations and drug-drug interaction adverse situations and alert the user to these potentially dangerous situations.  All of these details – all of these components and capabilities – are important and required.  This is not abstract, and it is not just any old way to prescribe medicine.

### 3.    The Systems of the '095 Patent Represent a Valuable Advancement with Important Benefits.

The systems of the '095 Patent were a major advancement over the prior art.  The Abstract of the '095 Patent generally describes the advances of the invention as follows:  "This system includes an improved process for facilitating and automating the process of drug order entry…. The system includes a database containing medical prescribing and drug information which is both general and patient-specific.  The system also permits the user to view current and previously prescribed medications for any patient.  The system can alert the user to potentially adverse situations as a result of the prescribed medication based on information in the database…. The system streamlines the order entry process and makes information important to

the drug ordering process easily available." *See* Exhibit A at p. 1; *see also* col. 2:65 through 3:29.

The systems of the '095 Patent represent an advancement over manual prescriptions, with valuable, tangible benefits.  The U.S. Department of Health and Human Services confirms that "handwritten prescriptions, faxed notes, [and] calling in prescriptions" are all "at high risk of error."  *See* Exhibit D.  Because of and to try to eliminate such errors and avoid their consequences, the Leapfrog Group, a national nonprofit healthcare industry organization advocating for improvements in patient safety and hospital transparency, has made support for Computerized Physician Order Entry ("CPOE") one of its key original "leaps" in quality American healthcare.  *See* Exhibit E.  Research performed by The Leapfrog Group[6] found that more than one million serious medication errors occurs every year in US hospitals.  *See* Exhibit F.  "The errors include administration of the wrong drug, drug overdoses, and overlooked drug interactions and allergies.  They can occur for many reasons [associated with manual prescribing], including illegible handwritten prescriptions and decimal point errors.  Medication errors often have tragic consequences for patients.  Many serious medication errors result in preventable adverse drug events (ADEs), approximately 20% of which are life-threatening."  *Id.*

The Leapfrog Group describes the benchmark for CPOE as the system of the '095 Patent: "Computerized physician order entry (CPOE) systems are electronic prescribing systems that intercept errors when they most commonly occur – at the time medications are ordered.  With CPOE, physicians enter orders into a computer rather than on paper.  Orders are integrated with patient information, including laboratory and prescription data.  The order is then automatically

---

[6] The Leapfrog Group is a national nonprofit healthcare industry organization advocating for improvements in patient safety and hospital transparency.  *See* Exhibit E.  One of its key original "leaps" in quality American healthcare is support for Computerized Physician Order Entry (CPOE).  *Id.*  The Leapfrog Group's research has shown CPOE to reduce serious prescribing errors by more than 50%.  *Id.*

checked for potential errors or problems.  Specific benefits of CPOE include: Prompts that warn against the possibility of drug interaction, allergy or overdose; Accurate, current information that helps physicians keep up with new drugs …; Drug-specific information that eliminates confusion …; Improved communication between physicians and pharmacists; and Reduced healthcare costs due to improved efficiency." *Id.*  The Leapfrog Group's research also showed the effectiveness of CPOE in accordance with the claims of the '095 Patent, finding that they "can be remarkably effective in reducing the rate of serious medication errors … CPOE reduced error rates by 55%... Rates of serious medication errors fell by 88%.... The prevention of errors was attributed to the CPOE system's structured orders and medication checks." *Id.*  Another study "demonstrated a 70% reduction in antibiotic-related [adverse drug events] after implementation of decision support for these drugs." *Id.*  Finally, the Leapfrog Group's research estimates "that implementation of CPOE systems at all non-rural U.S. hospitals could prevent three million adverse drug events each year." *Id.*

In addition, it would be impossible for a human to perform the systematic steps outlined by the '095 Patent.  The human would have to have immediate access and perfect recall of the multitude of patients whose information was contained in the database, along with each and every medication in exact detail, including dosage, frequency, and route of administration, and each and every allergy of each patient.  The current drug compendium contains more than 50,000 drugs with multiple dosage forms and strengths.  Adverse drug-drug interactions number in the tens of thousands.  Any suggestion that a human can perform this task accurately and systematically as described in the '095 Patent is entirely unrealistic.

**4.      The '095 Patent Does Not Preempt the Field of Prescribing Medications.**

The '095 Patent certainly did not preempt the field of prescribing medication at the time it was issued; rather, its systems were new and novel, as the USPTO found when it issued the '095 Patent and allowed its claims.  The specification of the '095 Patent describes its advantages over not only manual practices, but also over the computer systems of the day, including "stand-alone" systems and "total hospital systems" used at the time.  *See* col. 1:30 through 2:61.

And despite the fact that CPOE in accordance with the claims of the '095 Patent has become the benchmark, the '095 Patent still does not preempt the field.  Even in recent years, manual prescriptions have represented the vast majority of all prescriptions written in the United States.  Data provided by the U.S. Department of Health and Human Services showed that only about 1% of all prescriptions in 2007 (35 million out of about 3.42 billion), and only about 2.3% of all prescriptions in 2008 (78 million out of about 3.42 billion) were sent electronically.  *See* Exhibit G.

Moreover, even aside from the computer-based systems existing in the prior art as described in the specification of the '095 Patent, there are other modern computer-based systems that are alternatives to the systems of the '095 Patent.  For example, as the U.S. Department of Health and Human Services explains, "E-Prescribing can be conducted either through an EHR system that has e-Prescribing capability or through a stand-alone e-Prescribing system."  *See* Exhibit D.  Further, the HHS Department notes that, "You can use e-Prescribing in conjunction with clinical decision support features[.]"  *Id.*

Importantly, the '095 Patent is directed solely to e-Prescribing through an EHR system with computerized physician order entry (CPOE) and clinical decision support. The '095 Patent does not cover e-Prescribing through a stand-alone e-Prescribing system.  The '095 Patent does

not cover e-Prescribing without CPOE and clinical decision support.  And significantly, there are many electronic medical records systems (EMR) and EHR systems that ***do not*** include CPOE with clinical decision support.  Therefore, there are many "electronic prescribing" systems that would not infringe the '095 Patent, and thus, the '095 Patent truly does not preempt the field.

In other words, the systems of the '095 Patent are not the only way to prescribe medication, and not even the only way to electronically prescribe mediation; instead, they are the gold standard recommended by a leading industry group and encouraged by the U.S. Department of Health and Human Services.  The evidence is overwhelming that the systems of the '095 Patent are a specific, valuable solution and improvement, and not merely an unpatentable "abstract idea."

5.      **The Systems of the '095 Patent Are Not Abstract Ideas at All.**

The systems of the '095 Patent are different from the "abstract idea" claims that have been held unpatentable in recent cases in the Supreme Court, the Federal Circuit and in this District.  In each of these cases, the patent claims at issue were merely a ***description*** of a ***basic concept*** along with instructions to apply that concept on a computer.  *See Alice*, 134 S.Ct. 2347 (claims were merely a description of the concept of intermediated settlement, and instructions to apply those concepts on a computer); *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218 (2010) (same with respect to the concept of hedging against the financial risk of price fluctuations); *buySAFE, Inc. v. Google, Inc.*, __ F.3d __, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014) (longstanding contractual concept of a transaction performance guaranty); *Planet Bingo, LLC v. VKGS LLC*, __ Fed.Appx. __, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) (concept of managing and playing the game of Bingo); *Digitech Image Techs. v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) (process of organizing information through mathematical

correlations; "so abstract and sweeping" as to cover any and all uses of a device profile); *Loyalty Conversion*, ___ F.Supp.2d ___, 2014 WL 4364848 (concept of converting loyalty points from one vendor to another; analogous to currency conversion).  In addition, each of these cases involved ***method*** claims at their heart, which imply described how to perform the abstract idea, with some adding corresponding computer program claims or system claims that were nothing more than taking the method claims and saying "apply it," which of course does not transform an unpatentable method into something patentable under *Alice*.

Here, by contrast and as shown above, the claims of the '095 Patent describe very useful systems, that is, a specific application and implementation, not merely the general application of an abstract concept.  There are no method claims.  This is unlike the abstract concepts at issue in these recent cases where patents were held to be ineligible.

In a recent case, the PTAB found a patent to be subject matter eligible because the PTAB determined that the patent's core concept, processing paper checks, was not an "abstract idea." *U.S. Bancorp v. Solutran, Inc.*, 2014 WL 3943913 (PTAB Aug. 7, 2014) (finding the patent at issue to be subject matter eligible, even though it the check processing claims at issue were merely method claims) (attached as Exhibit H).  The PTAB distinguished *Alice*, *Bilski* and other Supreme Court cases where patents had been found to be subject matter ineligible, because those patents were based on fundamental economic practices, mathematical formulas, and basic tools of scientific and technical work that were abstract ideas.  Importantly, the PTAB was careful to examine the claims of the patent at issue ***as a whole***.  *U.S. Bancorp*, 2014 WL 3943913 at *8 (citing *Alice*, 134 S.Ct. at 2361 n.3).  The PTAB noted that the Petitioner's arguments were not persuasive because they were directed to individual method steps ***without accounting sufficiently for the claims as a whole***.  *Id.*  The Petitioner's approach in *U.S. Bancorp* is similar

to what NewCrop attempts to do here – it is as if NewCrop wants to stop at the preamble, argue that "prescribing medication for a patient" is the entirety of each claim of the '095 Patent, and be done with their analysis.  NewCrop fails to examine each and every limitation of the claims of the '095 Patent, individually and as a whole.  When those specific limitations are considered, it becomes clear that they describe a particular system with meaningful limitations, and not merely an abstract idea.

Similarly, Judge Guilford in the Central District of California recently denied a defendant's motion for summary judgment, holding that a patent covering "a computer system for monitoring a physical casino poker game" was not merely an "abstract idea" and therefore was subject matter eligible.  *Ameranth, Inc. v. Genesis Gaming Sols., Inc., et al.*, Case No. SACV 11-00189 AG (C.D. Cal. Nov. 12, 2014) (attached as Exhibit I).  The Court in *Ameranth* examined the limitations of a representative system claim of the patent at issue and found that the defendant had not established that the claims at issue merely set forth an abstract idea that had long been practiced.  *See Ameranth*, Slip Op. at 8 ("While it might be undisputed that people have hosted and watched poker games for as long as they have been played, that does not establish that the type of monitoring and player management required by the claims is an idea of similarly hoary provenance.").  The analysis is similar here.  NewCrop contends that the '095 Patent "does nothing more than claim a patent on the long practiced idea of prescribing medicine for a patient."  *See* NewCrop Motion at 2.  Yet, as discussed in Sections B(2), B(3) and B(4) above, the claims of the '095 Patent require much more – in other words, like the defendant in *Ameranth*, NewCrop has not established that the specific electronic prescription systems required by the claims and specific limitations of the '095 Patent comprise "an idea of similarly hoary provenance" as merely "prescribing medication for a patient."

**6.      Even If the '095 Patent Is an "Abstract Idea," It Contains an Inventive Concept, Additional Features, and Meaningful Limitations that Make It Subject Matter Eligible.**

Although the arguments above are focused on showing that the claims of the '095 Patent are not an unpatentable abstract idea, they also demonstrate that, even if the Court were to find that the core concept of the '095 Patent was merely an abstract idea, the claims contain an "inventive concept," "additional features," and "meaningful limitations" that would make the claims of the '095 Patent subject matter eligible.

Under this portion of the subject matter eligibility test, if the court determines that the patent claims comprise merely an "abstract idea," the court then asks, "what else is there in the claims before us?" *Alice*, 134 S.Ct. at 2355.  To answer that question, the court considers the elements of each claim as a whole to determine whether the additional elements transform the claim into a patent-eligible application. *Id.*  The Court in *Alice* described this as a search for an "inventive concept" and looks to whether the claim includes "additional features" beyond the "abstract idea." *Id.* at 2355, 2357.  This Court has articulated that this analysis includes whether the claims at issue contain "meaningful limitations." *See Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*, 2014 WL 1998053 at *4 (E.D. Tex. May 15, 2014) (Gilstrap, J.) (*analysis re-confirmed post-Alice in Rockstar Consortium US LP, Inc. v. Samsung Electronics Co., Ltd.*, Case No. 2:13-cv-894, Dkt. No. 75 (E.D. Tex. July 21, 2014)); *accord TQP Development, LLC v. Intuit Inc.*, Case No. 2:12-cv-180, Dkt. No. 150 (E.D. Tex. Feb. 19, 2014) (Bryson, J., by designation) (claims directed to the fundamental concept of an unpatentable abstract idea regain patent eligibility if the claim contains additional limitations on the scope of the invention's basic concept); *see also California Institute of Technology v. Hughes Communications, Inc.*, __ F.Supp.3d __, 2014 WL 5661290 (C.D. Cal. Nov. 3, 2014) (attached as Exhibit J) (denying motion for summary judgment under § 101, holding that software patent

claims were directed to abstract ideas, but that they contained meaningful limitations that represented inventive concepts).

Again, consider Claims 13 through 15 of the '095 Patent, which read as follows:

[Inherited from Claim 1]

A system for prescribing medication for a patient, said system comprising:

means for permitting a user to identify said patient;

***database*** ***containing health and medication information*** regarding said patient;

means for automatically accessing said database and ***displaying to said user a list of all of the currently prescribed medications*** for said patient;

***means for accepting and processing information regarding said medication prescriptions*** for said patient from the user ***including interpreter and reformatter means for processing said information received in a random sequence***, and wherein said information includes at least one medication identifier and information selected from the group consisting of: recognition of medication ordered, recognition of medication dosage, recognition of medication route, recognition of medication frequency, recognition of medication duration, recognition of medication quantity, formulary drug items, non-formulary drug items, restrictions on prescriptions, dosage availability, maximum dosage recommended for said patient, dosage frequency, and drug use evaluations; and

means for communicating said medication prescription to a pharmacy.

13.    The system of claim 1 further comprising:

***database*** ***containing health and medication information regarding medications*** and said patient;

***means for alerting said user to potentially adverse situations*** as a result of said prescribed medications, based on information in said database.

14.    The system of claim 13 ***wherein said adverse situation is an allergic reaction to said prescribed medication***.

15.    The system of claim 13 ***wherein said adverse reaction is an interaction between two or more prescribed medications***.

*See* Exhibit A (emphasis added, to indicate claim terms that comprise "additional features" and "meaningful limitations").

It is straightforward from the face of the claims of the '095 Patent and even a casual reading of the patent's specification that the claims involve an application rather than an abstract idea, and that they contain "additional features," "meaningful limitations," and an inventive system that is significantly more limited than simply "prescribing mediation for a patient."  *See, e.g., Alice*, 573 U.S. ___, 134 S.Ct. at 2357; *Rockstar*, 2014 WL 1998053 at \*4.  The patent claims show a bounded universe of applications in terms of a specific system for electronic prescriptions through an EHR system, not an abstraction.  *Compare, e.g., Rockstar*, 2014 WL 1998053 at \*4.

In addition, the portions of Claims 13, 14 and 15 that are emphasized above show that there are several separate limitations of each claim that provide "additional features" or "meaningful limitations."  Claimed limitations such as the database the provides all of the patient's currently prescribed medications, the means for processing information about prescriptions including medication identifiers and other critical information, the interpreter and reformatter means for processing information received in a random sequence, and the database containing the health and medication information to identify and alert the user to adverse situations such as drug-allergy adverse situations drug-drug adverse situations clearly articulate a system that is meaningfully limited relative to the general concept of "prescribing medication for a patient."  *Compare, e.g., Rockstar*, 2014 WL 1998053 at \*4; *TQP Development*, Case No. 2:12-cv-180, Slip Op. at 14 (denying motion for summary judgment on Section 101 grounds where the patent claim at issue involved a specific system for modifying data, even though the invention did not result in physical transformation).  These limitations also further demonstrate that the "field" of "prescribing medication for a patient" is not preempted by the claims of the '095 Patent, individually or collectively.  *Compare, e.g., Alice*, 134 S.Ct. at 2354 (citing *Bilski*,

561 U.S. at 611-12) ("The concern that drives the exclusionary principle of Section 101 subject matter eligibility is one of pre-emption.").

The guidance of the Supreme Court in *Alice* is particularly important to remember when considering the '095 Patent, its limitations, its inventive concept, and its benefits:

> [W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law.  At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.  Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept.  ***Applications of such concepts to a new and useful end, we have said, remain eligible for patent protection.***  Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the building blocks of human ingenuity and ***those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention***.  The former would risk disproportionately tying up the use of the underlying ideas, and are therefore ineligible for patent protection.  The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws.

*Alice*, 134 S.Ct. at 2354-55 (all internal citations and quotation marks omitted).  The systems of the '095 Patent are applications to a new and useful end, they integrate building blocks into something more, and they should remain eligible for patent protection.

**C.    To the Extent the Court Is Not Prepared to Expressly Hold the '095 Patent Subject Matter Eligible at This Time, the NewCrop Motion Should Be Denied Because There Are Disputed Issues of Material Fact and Unresolved Claim Construction Issues That Prevent Entry of Summary Judgment as a Matter of Law.**

Alternatively, to the extent the Court is not prepared to expressly find the '095 Patent to be subject matter eligible at this stage, the arguments put forth by Presqriber demonstrate that there are disputed issues of material fact, under the summary judgment standards, that require NewCrop's motion to be denied, and that there are unresolved claim construction issues that preclude the Court from entering summary judgment as a matter of law.

On summary judgment, the movant must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

Court must draw all reasonable inferences in favor of the non-movant. *Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 880 (Fed. Cir. 1998).

Here, NewCrop has not shown that it is entitled to summary judgment as a matter of law, because (a) Presqriber's arguments demonstrate conclusively that the claims of the '095 Patent are, indeed, subject matter eligible under 35 U.S.C. §101, and (b) NewCrop did not establish any claim constructions to show that it is entitled to judgment as a matter of law, and in fact did not even propose constructions for any claim term. Moreover, NewCrop has not satisfied its burden to show the absence of genuine issues of material fact. At a minimum, Presqriber has shown that there are a multitude of fact issues and likely claim construction issues present here that defeat NewCrop's Motion.

**D.     In the Alternative, Presqriber Requests Relief Under Fed. R. Civ. P. 56(d).**

Under applicable case law in this District, any decision that invalidates a properly-issued U.S. patent carrying a presumption of validity should at least be made in the context of the case as a whole, with a developed record on infringement, invalidity, and claim construction, so that the issues can be determined on a consistent and complete record. *See Loyalty Conversion*, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (Bryson, J., sitting by designation). Although the Court found the patent in suit in *Loyalty Conversion* to be Section 101-ineligible, it made sure to do so on a complete and consistent record. The Court noted that the question of law presented by a subject matter eligibility challenge "may contain underlying factual issues." *Id.* at *4 (quoting *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013)). The Court did not make its decision holding the patent at issue subject matter ineligible until it found that "the parties have not pointed to any factual issues that could affect the Court's analysis[.]" *Id.* By contrast, here Presqriber has pointed to important disputed factual issues that

go to the subject matter eligibility analysis, which preclude the granting of NewCrop's motion. Likewise, the Court reaffirmed the Federal Circuit precedent that "it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Id.* (quoting *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012)).    Accordingly, the Court "waited until after the claim construction hearing … to rule on the [Section 101] motion in order to ensure that there are no issues of claim construction that would affect the Court's legal analysis of the patentability issue." *Id.*  Again, the reasoning in *Loyalty Conversion* supports a denial of NewCrop's motion at this time, but in the event the Court is concerned that the '095 Patent may be subject matter ineligible, it shows that Presqriber should have a fair opportunity to fully develop the record so that the Court can understand the issues, view the facts in the light most favorable to Presqriber, and perform claim construction on a full and complete record.

Other courts have also reached a similar conclusion that the record should be fully developed before a presumptively valid U.S. Patent can be invalidated.  *See, e.g.*, *Macrosolve, Inc. v. Geico Ins. Agen., Inc.*, Case No. 6:12-cv-74-MHS-JDL (E.D. Tex. Feb. 5, 2013) ("Here, where the claims of unpatentabilty relate directly to the scope and meaning of a claim term, it is not only prudent, but necessary for the Court to conduct claim construction prior to determining the  patentability of the subject matter under 35 U.S.C § 101."); *Stoneeagle Servs., Inc. v. Davis*, Case No.  3:13-cv-894 (N.D. Tex. Aug. 14, 2013) (Dkt. No. 15) ("[C]laim construction will sharpen these  issues and offer more than two opposing takes on what the claims mean.  A ruling based on  briefing  alone  without evidence  invites pure guesswork. . . . As such, the  Court exercises   restraint over valor."); *Progressive Cas. Ins. Co. v. Safeco Ins.*

*Co.*, Case No. 1:10-cv-1370, 2010 U.S.  Dist. LEXIS 120225, at *16 (N.D. Ohio Nov. 12, 2010) ("Because the record is inadequate, the  Court will not address defendants' specific arguments as to whether the patent meets the  machine-or-transformation test or claims an abstract idea.  Accordingly, defendants' motion to  dismiss must be denied."); *see also Bancorp Services, LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent  eligibility requires a full understanding of the basic character of the claimed subject matter.").

Some of the fact issues have been described in detail above.  There are certainly fact issues as to relevant factors in the Section 101 analysis, such as the extent of preemption within the field, and the available alternatives.  Presqriber anticipates that further discovery and expert testimony on both infringement and invalidity will draw these facts out further.  Some of these issues have already come out, even though no discovery has been taken and the parties have not been required to reveal their contentions on infringement, validity or claim construction.  For example, defendant Athenahealth has stated in support of its counterclaims that its Accused Instrumentalities "do not have, either literally or under the doctrine of equivalents, the following element of claim 1: 'means for accepting and processing information regarding said medication prescriptions for said patient from the user including interpreter and reformatter means for processing said information received in a random sequence …"  *See* Athenahealth Answer & Counterclaims (Case No. 6:14-cv-442, Dkt. No. 13 at ¶ 16).  Presqriber does not agree with this statement.  But for purposes of this summary judgment motion, Presqriber is entitled to have the facts viewed in the light most favorable to Presqriber for purposes of the Section 101 issues. And in that light, this pleading supports the notion that the '095 Patent would not preempt the

field of electronic prescriptions and that there are alternatives for e-prescribing that would not be covered by the '095 Patent. This is a fact issue that goes into the Section 101 determination.

With respect to the fact issues underlying whether the claims of the '095 Patent are subject matter eligible, such as the scope of preemption and the available alternatives, Presqriber further notes that the light most favorable to Presqriber (for purposes of this summary judgment motion only) would be the light that gives rise to the narrowest scope of preemption and the most available alternatives. Among other things, the non-infringement positions taken by the defendants in the Presqriber Cases as well as by NewCrop would likely reveal these "narrowest" potentially plausible readings that would bear on the Court's analysis under the relevant summary judgment standards.

Likewise, with respect to claim construction, as Presqriber has previously discussed, this is a matter of law such that claim construction should occur before this Court can fully and properly consider the NewCrop motion, and certainly should occur before the motion could be granted (which it should not).

In this case, discovery is not yet open and therefore no discovery has taken place. In addition, the parties have not provided any disclosures as are required under this Court's standard procedural orders and under the Local Patent Rules. Further, the parties have not identified terms for construction, provided proposed constructions, disclosed supporting evidence, prepared claim construction briefing, or participated in a claim construction hearing, all as set forth in Local Patent Rule 4 and its subsections. As described above, Presqriber anticipates that these activities will develop information related to all disputed facts as set forth in Sections A, B, and C of the "Response to Statement of Facts and Discussion of Disputed Material Facts" in this brief. Presqriber further anticipates that these activities will result in

proper claim construction as a matter of law, which is necessary before the Court could grant a motion for summary judgment under the Rule 56(a) standard (which it should not).  For these reasons, and as further set forth herein, Presqriber cannot present facts essential to justify its opposition to the NewCrop motion.  *See* Tadlock Declaration at ¶ 10.

Accordingly, in the alternative to its request that the Court simply deny the NewCrop motion, Presqriber requests relief under Fed. R. Civ. P. 56(d) – that is, that the Court defer considering the NewCrop motion or deny it, and/or that the Court allow the prescribed time under its procedural orders and the Local Patent Rules for Presqriber to take discovery and obtain other affidavits or declarations.

## **CONCLUSION**

For the reasons set forth in this response brief, Presqriber respectfully requests that the Court deny the NewCrop motion, on one or more of the following grounds: (a) that the claims of the '095 Patent are subject matter eligible; (b) that there are genuine issues of material fact that defeat the NewCrop motion; or (c) that NewCrop has failed to establish that it is entitled to judgment as a matter of law because it has not established any claim constructions as a matter of law.  In the alternative, Presqriber requests relief under Fed. R. Civ. P. 56(d) – that is, that the Court defer considering the NewCrop motion or deny it, and/or that the Court allow the prescribed time under its procedural orders and the Local Patent Rules for Presqriber to take discovery and obtain other affidavits or declarations.  Finally, Presqriber respectfully requests that the Court grant Presqriber such other and further relief to which it is entitled.

Dated: November 20, 2014               Respectfully submitted,

                      */s/ Craig Tadlock*

                      Craig Tadlock
                      State Bar No. 00791766
                      John J. Harvey, Jr.
                      State Bar No. 09179770
                      Keith Smiley
                      State Bar No. 24067869
                      **TADLOCK LAW FIRM PLLC**
                      2701 Dallas Parkway, Suite 360
                      Plano, Texas 75093
                      903-730-6789
                      craig@tadlocklawfirm.com
                      john@tadlocklawfirm.com
                      keith@tadlocklawfirm.com

                      *Attorneys for Plaintiff Presqriber, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system, in accordance with Local Rule CV-5(a)(3), on this the 20th day of November, 2014.

                      */s/ Craig Tadlock*
                      Craig Tadlock